GREVER v. UNITED STATES HOFFMAN CO. et al.

UNITED STATES HOFFMAN CO. et al. v. LASANCE.

(Circuit Court of Appeals, Sixth Circuit. February 14, 1913.)

Nos. 2,374, 2,336.

1. PATENTS (§ 26*)—INVENTION—NEW RESULT.
    Where a transposition of parts, accompanied by some adaptation, gets a new coaction and a new result, it may be invention.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

2. PATENTS (§ 35*)—INVENTION—EXTENT OF USE.
    Where there has been extensive use, and defendant has copied, patentee is entitled to the benefit of the doubt on question of utility of his change.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. § 35.*]

3. PATENTS (§ 163*)—INFRINGEMENT—CONSTRUCTION OF CLAIMS.
    Where a patent was granted on the contention and argument of the applicant that his device was distinguished from a prior reference in a certain particular, he cannot insist that such feature is immaterial to establish infringement.

4. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CLOTHES-PRESSING MACHINE.
    The Hoffman patent, No. 928,199, for a clothes-pressing apparatus, was not anticipated and discloses invention; also, *held* infringed by one machine and not infringed by another.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 238; Dec. Dig. § 163.*]

Appeals from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suits in equity by the United States Hoffman Company and others against Edward C. Grever and against August Lasance. Decree for complainants in first case and defendant appeals, and for defendant in second case and complainants appeal. Affirmed on both appeals.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Hoffman and the Hoffman Company brought, in the court below, two infringement suits based upon patent No. 928,199, issued to Hoffman July 13, 1909, on application filed December 1, 1904, for a clothes-pressing apparatus. Grever, defendant in No. 2,374, was using a device admitted to be broadly similar to Hoffman's and his defense was that the patent was invalid. Lasance, defendant in No. 2,336, used a machine claimed to differ essentially from that of the Hoffman patent, and his defense was noninfringement. The District Court adjudged the patent valid, and entered a decree against Grever; but thought the Lasance machine was outside of the patent, and in that case dismissed the bill. The defeated party in each case appeals.

The essentials of pressing clothes—moisture, heat, and pressure—are obtained in the most elementary form, by the weight of a hot iron on the upper surface of a moistened cloth interposed between the iron and the garment. Hoffman provided an apparatus having a table, or buck, upon which the garment was to be placed, and having hinged, above this buck, a presser plate which could be raised or lowered on its hinge. The face of the presser plate was full of fine openings, and carried, on its upper side, a steam chamber connected with a steam supply. The garment to be pressed is placed on the buck, the presser plate is brought down thereon, downward force is extended through a foot lever or other means, and, at the same time, steam, under pressure, is admitted to the chamber in the presser plate and driven out through the fine openings onto the upper surface of the garment. The presser plate is also independently heated, and it is claimed that the entire operation of moistening, pressing, and sufficiently drying is performed at one stroke of the depressing pedal, and almost instantaneously.

The patent contains 16 claims. Hoffman alleges that some of these are infringed by Lasance, and all of them by Grever. The first claim fairly expresses the broadest aspect of the claimed invention, and is all that need be quoted for the purposes of this opinion. It is:

"1. In a garment pressing machine, a supporting bed for the garment, a foraminous presser plate permanently associated with and movable toward and from the upper surface of the bed, and means for projecting steam through the foraminous presser plate while the latter is in its pressing position."

W. F. Murray, of Cincinnati, Ohio, for appellant Grever.

Arthur Stem, of Cincinnati, Ohio, for appellee Lasance.

F. W. Cameron, of Albany, N. Y., for United States Hoffman Co.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1, 4] As in every controversy involving validity and infringement, we must determine two questions: First, did the patentee in fact make any real advance in the art, and if so, what was its full extent? Second, applying to his contract with the government, as summarized in his claim, the settled rules of construction, can that contract reasonably be read as granting to him such a monopoly of his actual advance as will include defendant's embodiment? So we must, in this case, as usual, first examine the state of the art and then construe the claim.

The closest earlier structure is found in a German patent to Bossen, No. 59,423, published October 19, 1891, and this presents the clear question whether Hoffman merely transposed the parts of the Bossen machine, or whether he accompanied this transposition by such a reorganization and adaptation as to invoke a new operative interrelation. As this question is decided one way or the other, the Hoffman patent is void or valid. In the Patent Office, the Primary Examiner held to

the former view and persistently rejected all the broader claims; on appeal, the Board of Examiners in Chief adopted the latter view, and directed the patent to issue.

The Bossen device was, primarily, intended for pressing garments which had been in a dye vat, and in order to smooth out the wrinkles, rather than for pressing garments in a tailor shop to shape them; but this distinction is not of vital importance. Bossen had the supporting bed or buck and the superposed, hinged, heated presser plate. The supporting bed consisted of a plate full of fine openings, having beneath it a chamber supplied with a steam connection. The described method of operation was that the garment should be placed on the supporting bed, the steam should be turned on from below and allowed to pass up through the openings in the surface plate and saturate the garment, and then the heated presser plate should be lowered and allowed to remain a few moments. As a matter of first impression, Hoffman only transposed Bossen's foraminous plate and steam jet from the buck to the presser head; and it is clear that neither this transposition nor an increase in the pressure or temperature of the steam used, nor a decrease in the time of steam exposure, would, of itself, constitute invention.

We come, then, to the theory of distinction by which Hoffman was able to overrule the Primary Examiner, and which is the only clear theory of distinction presented to us. His garment to be pressed or shaped lies with its surface or nap side upward. It is this nap side with which the shaping and drying hot presser plate comes in contact. When the steam comes from below, it must penetrate the thickness of the fabric, and of the linings, if any, and often must penetrate double thicknesses of lining and fabric, before it can reach this surface which is to be pressed; in other words, there must be measurable saturation of the whole, before the surface can be slightly moistened. When the steam comes from above and is not long continued, it will not saturate the garment, but will affect only the upper surface; and not only will this be put in the best condition to be affected by the pressing, but such operation avoids that saturation through and through, which will call for a more difficult and delayed drying than is here required. Here, the moistening is so comparatively slight that the same brief heating pressure which shapes also dries.

This is Hoffman's theory of the operation. It involved a new thought not called out in Bossen's machine or operation and not obvious therefrom. It was not merely a reversal of parts, but a discovery that, by the reversal of parts, and adaptation that was simple enough after the reason for the change was observed, he could get a new result, and that the parts so combined would coact in a different manner; and from such new coaction and such new result it follows that there was invention, and the patent is valid. Star Works v. General Co. (C. C. A. 6) 111 Fed. 398, 49 C. C. A. 409.

[2] Comparison of the two machines, with the aid of common knowledge as to the operation of steam and heat, does not absolutely demonstrate that the described differences are very vital, or that the nov-

elty of the result is substantial and practical rather than vague and theoretical. We confess to some doubts on this subject. However, the patentee is entitled to the benefit of such doubts; they pertain to the question of utility; and where the device has gone into very extensive. public use, as here, and where the defendant has adopted the very construction involved, as Grever has, a doubtful question of patentable utility is foreclosed. Diamond Co. v. Consolidated Co., 220 U. S. 428, 440, 441, 31 Sup. Ct. 444, 55 L. Ed. 527.

We see no necessity for deciding whether Grever infringes the narrower claims. A decree on the broadest claims, 1 and 16, will give Hoffman full relief.

[3] Lasance has a machine which is quite clearly a reversion to the type of Bossen. His steam comes into the garment from below, through the foraminous surface of his stationary supporting bed, and it must penetrate and saturate the garment before it reaches that surface with which the superposed, hinged presser plate comes in contact. He clearly avoids the letter of the Hoffman claim, because he has no superposed "foraminous presser plate" which is "movable toward and from the surface of the bed." At the same time, if the claim was entitled to the broadest range of equivalents and was without limitation in the prior art, there would be no difficulty in finding infringement, under the familiar rule already referred to that a mere transposition of parts will not enable an infringer to escape. It would be a natural impression to think that Lasance has followed the teachings of Hoffman, except in an immaterial particular. He has the same parts operating apparently in the same general way and producing the same final product. However, the fact is that the one particular in which Lasance has not followed the teachings of Hoffman is the very particular which Hoffman insisted was essential to build up for him an invention over Bossen, and a failure to follow in this respect is a vital failure. Hoffman cannot, at the same time, say that a reversal of parts is material when he is defending against Bossen, and of no consequence when he is attacking Lasance. This situation is within the spirit, though perhaps not within the letter, of the rule that the construction which would not anticipate cannot infringe. American Co. v. Streat (C. C. A. 4) 83 Fed. 700, 706, 28 C. C. A. 18; Cleveland Co. v. Chicago Co. (C. C. A. 3) 135 Fed. 783, 68 C. C. A. 485.

Some other alleged distinctions in operation between Bossen and Hoffman are pointed out in addition to the one we have discussed, and it is attempted to predicate invention on these differences, and so to avoid the claim limitation necessarily to be implied if there was only the one distinction. We are not satisfied that these additional matters have real existence, but we are saved from further study of them by another consideration. The claim of the patent, read literally, is limited to a structure having the foraminous presser plate swinging from above. The most that can be said for complainant is that the claim is ambiguous and might receive another and broader construction. We find, then, that throughout the long arguments to the Primary Examiner, and in his presentation of the matter to the Board, Hoffman insisted that he was entitled to a patent

over Bossen just because and only because he did apply his steam to the upper surface, with slight penetration, instead of from below, with saturation. The Board accepted this view and granted the patent because of this view. In other words, on the theory that there is room for more than one construction of the claim, it was solicited by Hoffman and granted by the Patent Office upon the theory, carefully expressed by both, that it had a particular meaning. It is true an argument of a solicitor in the Patent Office does not, of itself, work an estoppel; but this was not merely an argument that, for one reason or another, the application disclosed invention over the reference; it was in substance a statement that the phrases "upper surface" and "foraminous presser plate" in the claim must be construed as distinguishing the claim from a device which *did not,* and so limiting the claim to a device which *did,* apply the steam from the upper or surface side. It seems clear that, just as in any written contract the construction put upon its language by both parties at the time of its making is admissible to solve any ambiguity which may rest in the finally selected language, so, upon that principle, if upon no other, Hoffman must be confined to a construction of his claim which will not include Lasance. Goodyear v. Davis, 102 U. S. 222, 227, 26 L. Ed. 149.

Upon the argument, it was suggested that the Lasance machine could be used by laying the garment face down and allowing the lower member to serve as a presser plate, thus accomplishing exactly what Hoffman did. There is no evidence that the machine ever was so used, and that method of use seems highly awkward, if not practically impossible. We do not think it necessary to consider the problem which would be presented by a machine adapted and intended to be used for practicing the Hoffman idea of surface moistening, as distinguished from saturation, but moistening the surface that is placed downward instead of that which is placed upward. The Lasance is not such a machine. It will be time enough to consider that question, if such a machine is ever built and works well enough to justify an infringement suit.

In the Lasance case, the decree below is affirmed; in the Grever case, the fourth paragraph of the decree may be modified so as to refer only to claims 1 and 16, and so modified, is affirmed. In each case, appellee will recover costs in this court.