## WM. B. SCAIFE & SONS CO. v. FALLS CITY WOOLEN MILLS.

(Circuit Court of Appeals, Sixth Circuit. November 4, 1913.)

No. 2,309.

1. PATENTS (§ 165*)—INFRINGEMENT—ANTICIPATION.

Where the broader view of a claim is necessary to make out infringement, the proof of anticipation must be considered from the same point of view.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

2. PATENTS (§ 165*)—CONSTRUCTION—READING LIMITATION INTO CLAIM.

Where a patentee has made an improvement entitled to protection, and in the claim directed to that feature it is described in terms which are capable of a broad construction, rendering the claim invalid in view of

the prior art, or of a narrower construction which will preserve to it the validity which it should have had, the courts will give it that narrow construction and so sustain the patent; but where from the specification or history of the application or the language of the claim it is clear that the patentee intended to claim, and the Patent Office to grant, the broader monopoly, which turns out to be invalid, the courts will not, for the arbitrary purpose of saving the claim, read into it a limitation which it does not have.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

3. PATENTS (§ 165*)—CONSTRUCTION—DIFFERENTIATION OF CLAIMS.

The propriety of the rule that proper construction and effect can be given to each claim of a patent only by differentiating it from the other claims, in a normal case where it can be clearly applied, is not affected by the fact that in many cases it is difficult to make such differentiation because of repetition and confusion.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

4. PATENTS (§ 165*)—CONSTRUCTION—DIFFERENTIATION OF CLAIMS.

When satisfied that a particular claim had for its dominant purpose to secure one particular feature, we should not construe it as specific also in its calls for other elements.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

5. PATENTS (§ 165*)—CLAIMS—CONSTRUCTION.

In construing a claim in that respect ambiguous, a given element should be implied, if its presence was necessary to distinguish from the prior art or from the other claims; otherwise, it should not operate as a limitation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

6. PATENTS (§ 165*)—EFFECT OF PATENT OFFICE PROCEEDINGS.

A statement by the solicitor that the claim was to be confined to the "exact form" held not an estoppel because imitation was not required, and not a persuasive admission because of the context.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

7. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—WATER PURIFYING APPARATUS.

The Greth patent, No. 775,901, for a water purifying apparatus, claim 11, as differentiated from most of the other claims, is not limited to a combination calling for separate compartments in which the lime treatment and the soda treatment are carried on, but has for its principal element the specific battery of independent unit filters described, each of which can be cut off for cleaning without affecting the others, used in combination with a settling compartment and a chemical treating compartment, broadly specified, which may or may not be subdivided. As so construed, the claim was not anticipated and discloses patentable invention; also, held infringed.

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Suit in equity by the Wm. B. Scaife & Sons Company against the Falls City Woolen Mills. Decree for defendant, and complainant appeals. Reversed.

For opinion below, see 194 Fed. 139.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

F. W. H. Clay, of Pittsburgh, Pa., for appellant.

A. M. Hood, of Indianapolis, Ind. (Bodley & Baskin, of Louisville, Ky., of counsel), for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. Appellant filed, in the court below, the usual infringement bill based upon patent No. 775,901, issued to Greth, November 22, 1904. It planted its prima facie case on claims 9, 10, 11, and 12. Later, it withdrew claims 9 and 12, and went to final hearing on claims 10 and 11 only. The District Court dismissed the bill and filed an elaborate opinion which so fully discloses the facts involved that we shall need to make thereto only brief additional references. The opinion below is reported in 194 Fed. 139.

In construing claims 10 and 11 (quoted in margin)[1] to determine either validity or infringement, the important underlying situation is this: Greth's patent was upon an apparatus, and not a process. His drawing showed and his specification described a structure embodying four parts through which successively water continuously flowed. These were a tank or chamber in which the water received lime and in which the resultant chemical reaction took place; a tank or chamber in which soda was added and the chemical reaction therefrom followed; a tank or chamber where, after the chemical treatment, the water entered at the bottom and overflowed from the top and in which sedimentation occurred; and a filter through which passed the water overflowing from the top of the settling tank. The structure in which these parts were embodied, as illustrated by Greth, may be described in general terms as a vertical cylindrical all inclosing tank (8) divided into two main compartments by a segmental vertical partition reaching from the top nearly to the bottom. One of these is the settling tank; the other is subdivided by a horizontal partition having a flow opening; the upper subdivision being the lime and the lower the soda compartment. The defendant's device had these same parts, thus generally described, excepting that the two main chambers were formed by an inner concentric vertical partition, and both the lime treatment and reaction and the soda treatment and reaction occurred in one chamber (the inner) which had no physical partition between its upper and lower parts.

[1] "Claim 10. In water purifying apparatus the combination in a single tank 8 of the various compartments for lime treatment and soda treatment and water settling, the settling tank being fed directly from the treatment tank and having an inclined bottom therein below the opening from the treatment tank, and having a filter at the top of the settling tank fed by overflow from said tank, substantially as described.

"Claim 11. In continuous flow water purifying apparatus, the combination with a single tank containing the chemical reacting compartment, and an upward flow settling compartment, of a series of independent gravity filters carried on the top of the tank, fed by overflow from the settling compartment, and each having means for washing the filter and a valve to close communication with the settling compartment, whereby any one of said filters may be isolated and washed, while the flow continues through the others from said supporting tank."

[1] Keeping this situation in mind, when we scrutinize claim 10, we see that it calls distinctly for the element filter and for the element settling tank and, apparently, also for the two elements lime tank and soda tank. It is the patentee's theory that these two latter are really one element or that one treatment tank for both reactions is the equivalent of the two; while it is the defendant's position that the claim calls for four elements, and is therefore not infringed by a device having only three. Obviously, the former or broader view of the claim is necessary to make out infringement, and so the proof of anticipation must be considered from the same point of view, viz., that the claim was for a chemical treatment tank, a settlement tank, and a filter, arranged in the specified mutual relation.[2] So considered, it is anticipated. The English patent to Patterson, mentioned in the opinion below, discloses these three elements in the same substantial form, operating in the same succession and in substantially the same way. Claim 10, with this construction, which it must have in order to be infringed, reads perfectly upon Patterson.

[2] It is suggested that the phrase "having a filter at the top of the settling tank fed by the overflow from the said tank substantially as described" should be construed as calling for the specific kind of filter shown and described, viz., a filter divided into several units, each one of which can be independently cleaned, and that, if the call in the claim for "a filter" is so construed, the invention is not anticipated. Where it appears that the patentee had made an improvement upon which he was entitled to receive protection, and that in the claim which was directed to that feature of his invention it is described in terms which are capable of a broad construction rendering the claim invalid in view of the prior art, or of a narrower construction which will preserve to it the validity which it should have had, the courts will give it that narrow construction, and so sustain the patent; but where, from the specification or the history of the application or the language of the claim it is clear that the patentee intended to claim and the Patent Office intended to grant the broader monopoly which turns out to be invalid, the courts will not, for the arbitrary purpose of saving the claim, read into it a limitation which it does not have.[3] Resorting to all these means of interpretation, including a comparison of the several claims, we are satisfied that claim 10 will not bear this narrow construction; and not the least of the considerations compelling this result is the fact that this peculiar form of filter is the dominant thought of another claim.

---

[2] For instances of the general rule that which infringes if later anticipates if earlier, see Miller v. Eagle, 151 U. S. 186, 203, 14 Sup. Ct. 310, 38 L. Ed. 121; Wells v. Curtis (C. C. A. 6) 66 Fed. 318, 324, 13 C. C. A. 494; Eames v. Worcester (C. C. A. 6) 123 Fed. 67, 72, 60 C. C. A. 37; Grever v. Hoffman (C. C. A. 6) 202 Fed. 923, 926, 121 C. C. A. 281.

[3] That an ambiguous claim will be read in the more limited sense when necessary to sustain its validity, see Lamb Co. v. Lamb Co. (C. C. A. 6) 120 Fed. 267, 269, 56 C. C. A. 547. That a limiting element cannot be read into a clear claim to save it from invalidity, see McCarty v. Railroad, 160 U. S. 110, 116, 16 Sup. Ct. 240, 40 L. Ed. 358; Stearns v. Russell (C. C. A. 6) 85 Fed. 218, 224, 29 C. C. A. 121.

Coming now to examine claim 11 from the same general point of view, we see at once that the claim is ambiguous in respect to whether it calls for the three or the four main elements. It refers to the tank "containing the chemical reacting compartment." If by this is meant the compartment shown and described, and in its specific form, it means a compartment having two chambers with a nearly closed partition between them; but if it intends to refer to the structure more generally, it designates that portion on the treatment side of the main partition, and is satisfied by one chemical treatment compartment. The latter construction spells infringement; the former, escape.

[3] This patent is one having a series of twelve claims. It is sometimes said that in such case each claim should be considered as a separate patent. This statement, accurate enough for some purposes, is misleading, if followed too far; but we must at least say that, usually, proper construction and effect can be given to each claim only by differentiating it from the other claims. Each claim should be capable of such differentiation, else it has no right to exist; and the difficulty often found in doing so, caused by repetition and confusion, does not affect the propriety of this rule of construction in a normal case where it can be clearly applied.[4] Each claim should be directed at some function, step, or advantage to give it individuality; it should have a characterizing thought or point by which it can be identified; and, if the court which is to construe the claim can find this dominant thought, its task will be simplified. We may make this concrete by supposing that elements A, B, and C are each old in several specific forms, but are operative only in the combination A, B, C. An inventor perfects new and useful specific forms of each, a, b, c. The most desirable form of his invention is the combination a, b, c, and this the inventor considers his perfect work; but he may use and is entitled to monopolize one or two of the old forms in combination with two or one of his new forms. He may have, and the proper drafting of his patent will secure for him, a series of combination claims like this (capitals representing generic, lower case, his new specific forms): (1) a, b, c; (2) a, b, C; (3) a, B, c; (4) a, B, C; (5) A, b, c; (6) A, B, c; (7) A, b, C. In this series, claim 3, for example, we assume is intended to secure the new specific forms, a, c, united with any form, new or old, of the well-known element B; and claim 7 protects the exclusive use of the new form, b, with any variety or equivalent, new or old, of the elements A, C. In practice, however, the claim elements often cannot be effectively labeled "generic" or "specific."; terms are used capable of either construction; and here is the interpretative usefulness of claim differentiation. If, in claim 7, A and C were recited in ambiguous words which might import only the species shown and described, a or c, or might refer to the genus, A or C, comparison of the claims shows that the former narrower monopoly has been variantly and fully

4 Anderson v. Potts (C. C. A. 7) 108 Fed. 379, 383, 384, 47 C. C. A. 409; Lamson v. Hillman (C. C. A. 7) 123 Fed. 416, 419, 59 C. C. A. 510; Duncan v. Cincinnati Co. (C. C. A. 6) 171 Fed. 656, 663, 96 C. C. A. 400; O'Rouke v. McMullen (C. C. A. 2) 160 Fed. 933, 939, 940, 88 C. C. A. 115; Thomson-Houston Electric Co. v. Union R. Co. (C. C. A. 2) 86 Fed. 636, 638, 30 C. C. A. 313.

granted by claims 1, 2, and 5. Hence claim 7 either has the effect above assumed or it is a useless and inoperative repetition of one of the others. Obviously the former alternative should be accepted, and we solve our problem by concluding that the fullest attainable protection of the presence in this combination of the new specific form, b, is the identifying point or characterizing thought of this claim.

[4] We may solve this same problem by more rough and ready methods of claim comparison, since few cases admit of such accurate analysis as our illustration. In practice, the claims rarely show with certainty whether their reference to the named element is generic or specific; they may use or omit reference letters; they may employ the definite or indefinite article; they may or may not say "substantially as described." These things are usually of little help in construction—often none at all.[5] But if we can be satisfied from the specification and a comparison of the claims that a particular claim was intended and had for its dominant purpose to secure and protect the use, in the combination, of one particular feature, we should give its fullest permissible effect for that purpose, and should not construe it as specific also in its calls for other elements—unless some other rule of construction requires us to do so.

In the present case, the specification describes the progress of the water through the lime chamber and the soda chamber and the settlement tank, giving full descriptions of each. Greth not only describes the two treatment tanks, but says:

"I regard the separate and distinct treatment of the lime in one tank and the soda in another as important."

He then takes up and describes the filter, explaining the division of the filter into sections or units, and the means employed for reversing the flow of water through and cleaning any one unit without disturbing the settlement tank and without interfering with the operation in any other filter unit, whereby a continuous flow of filtered water is secured without interruption by the necessary, frequent cleaning. In each of the first 8 or 9 claims there is an express requirement for a lime tank and a soda treatment tank, separate and distinct from each other; for example, claim 1 says "a separate soda treatment tank"; claim 2, "an independent tank for treatment by a second chemical"; claim 3, "a soda treatment tank being below and entirely separate from the lime treatment tank"; claim 8, "each of which compartments is separate from the rest," etc.

These eight or nine claims make up various combinations and subcombinations to which we assume the patentee was entitled; each one expressly stating or implying that there were to be two independent and separate chemical treatment tanks. In only part of these nine claims is the filter mentioned at all, and then only in general terms as "a filter," etc. In claim 10, the language is "the combination in a single tank (8) of the various compartments for lime treatment and soda treatment and water settling." The fact that the two chemical treatment tanks are separate is not here emphasized as it has been be-

5 Houser v. Starr (C. C. A. 6) 203 Fed. 264, 269, 270, 121 C. C. A. 462.

fore, although perhaps it is implied. When, however, we come to claim 11, we find less ambiguity. The language is "the combination of a single tank containing the chemical reacting compartment and an upward flow settling compartment with a series of independent gravity filters," which filters are then specifically described, and their function is pointed out. The question then is: Should this claim, because it refers to "the compartment," be confined to the specific form of compartment which has been made the subject of previous claims, and is here not mentioned? We are satisfied that the patentee thought he had invented a new improvement in filters which would be especially useful in connection with his complete apparatus, but was also useful in combination with any treatment and settlement tanks, and that he intended by his claim to protect the right to use his form of filter in combination with his general type of apparatus. The reference to the filter is and must be considered as specific; the reference to the treatment tank is apt and suitable to be and should be considered as generic. The claim and the structure it fairly imports ought not to be sacrificed to the words found in other parts of the grant.

[b] Another analogous consideration leads to the same result. It is only applying to a patent the ordinary rules of construction applied to other grants, to say that, in determining whether a given element should be considered as present with a limiting effect in a claim in that respect ambiguous, we should observe the occasion or the necessity for its introduction by the claim draftsman. If its presence was necessary to distinguish the claim in point of patentability from the prior art or in point of effect from the other claims, it should be implied; but, if it can be of no use in either of these particulars, it should not operate as a limitation.[6] Of course, we are speaking only of ambiguous claims and not of those where the claim language requires the limitation.[7] Applying this formula, claim 11 must be treated as calling only broadly for the chemical treating compartment as a unit, distinguished from the settling compartment; the characterizing thought of the claim had to do with the presence in this general combination of Greth's particular improvements in filters. The filter received its water from the top of the settling tank; the settling tank received its water from the bottom of the treatment tank, and, necessarily, from the last treatment tank, if there was more than one; the treatment tank, broadly considered, was a proper element of the combination, because thereby the water was given ultimate character affecting its conduct in the settlement tank; but there could be neither inventive thought nor patentable novelty in adding to this combination one or two or ten tanks in which the water had been treated before it came to the treatment tank from which it passed to the settlement tank. There was therefore no occasion for Greth to include in this claim the preliminary, separate lime treatment tank; ev-

6 Ryder v. Schlichter (C. C. A. 3) 126 Fed. 487, 491, 492, 61 C. C. A. 469; Wagner v. Wyckoff (C. C. A. 2) 151 Fed. 585, 591, 81 C. C. A. 129.

7 Keystone v. Phœnix, 95 U. S. 274, 278, 24 L. Ed. 344; Cimiotti v. American, 198 U. S. 399, 415, 25 Sup. Ct. 697, 49 L. Ed. 1100.

ery presumption must be that he did not unnecessarily limit his claim; and such presumption must prevail where, as here, the selected language is not at all inconsistent with the broader interpretation.

Still further confirmatory of this construction is what happened in the Patent Office. Claim 11 is the evolution of original claim 16, which was drawn merely to the combination of a tank and Greth's battery of independent unit filters with means for separately cleaning each. This was rejected, because anticipated by separately operating filters in connection with the pond or river used for a city water supply. Greth then amended by identifying his tank as "a single tank containing the chemical reacting compartment and an upward flow settlement compartment," and the claim was then allowed. There is here no intimation that the examiner required Greth, or that Greth intended, to confine his claim to a device having two separate chemical reacting compartments. It is true, he said, in making this amendment:

"The two claims [10 and 11] as now drawn, are confined to the exact structure and are different from the prior art in the following particulars: The washing of the filters does not interrupt the flow through the tank, and all the filters are fed only from the top overflow from the tank and not under variable pressure; the filters are independent and are carried on the tank itself, which is necessary to the unity and simplicity of the apparatus aimed at. The filter per se is not supposed to be new, but it has a peculiar function as modified and adapted to co-operate with this tank and other filters of a series in a continuous flow single tank system."

[6] This statement that the claim was confined to the "exact form" falls distinctly short of making either an estoppel or a conclusive admission as to the meaning of the claim in the respect now under discussion. It is not an estoppel, because Greth was not required to put the two separate treatment tanks into this claim in order to get his patent allowed;[8] it is not a conclusive or at all persuasive admission because the whole context shows he did not have this point in his mind. The claim was confined to the (comparatively) exact form and distinguished from the prior art in all the various particulars which he proceeds to enumerate, but none of them have anything to do with the question of one treatment tank or two.[9]

[7] There remains only the question whether claim 11 discloses patentable invention as compared with the prior art. We have construed this claim as calling, somewhat broadly, for the combination in one continuous flow structure of the chemical treatment (downward flow) compartment, the upward flow settling tank and Greth's battery of overflow filters. So construed, its only distinction from the Patterson English patent or the De la Coux device described in a French publication in 1900, is in the form and operation of the filter. Each of these devices had a single filter at the top of the tank and fed by overflow from the tank. Patterson had a sand filter bed through which

---

[8] Bundy v. Detroit (C. C. A. 6) 94 Fed. 524, 543, 36 C. C. A. 375; Wayne v. Benbow (C. C. A. 8) 168 Fed. 271, 279, 93 C. C. A. 573; Sly v. Russell (C. C. A. 6) 189 Fed. 61, 110 C. C. A. 625.

[9] Vrooman v. Penhallow (C. C. A. 6) 179 Fed. 296, 102 C. C. A. 484.

the water passed downwardly. De la Coux had a filter bed through which the water passed upwardly, being first carried in a passageway from the top of the tank to the bottom of the filter. Neither of these disclosed any means of cleaning the filter bed, except by stopping the operation of the entire structure. The idea of a group of filters, each of which could be cut out independently without affecting the work of the others was broadly old, but had been applied nowhere except in city water supply systems or for analogous uses where the lake, river, or pond was the settlement basin and the water was brought therefrom in conduits to the filters. It had never been applied as a part of a unitary structure in the treatment of water to produce a comparatively small continuous flow for industrial purposes. When so united with such a structure, in a compact, unitary, well-designed, and effective form, it makes a new combination, and it produces a result different from what had before been accomplished. It seems now a simple thing to substitute the battery of independently cleanable filters for the single filter; if it had been a common expedient in analogous situations to substitute one for the other, we would have a different question; but this substitution involved both the thought and considerable necessary structural adaptation. The patent has been granted, the defendant by adoption has certified its usefulness, and the lack of anything more than mechanical skill is not clear enough to justify us in saying that there was lack of invention.[10] Our only difficulty in reaching this conclusion arises because De la Coux, in the French publication, in 1909, and referring to his upward-flow filter, said:

"A filter formed of an annular space concentric with the outer wall of the center may be divided into two parts to facilitate the cleaning, without stopping the purification."

This was a suggestion of the very thing which Greth did, and it was in connection with the otherwise complete combination used by Greth; but we think it only a suggestion. Neither drawing nor description told how to do it. Such matter as this must be either a full disclosure equivalent to a full anticipation, or else it is properly classifiable as a suggestion. Greth adapted and combined together the treatment and settlement tanks of De la Coux, the separable unit idea of the city water systems, and the cleaning by reverse flow idea found in other filters. To do this, he devised suitable forms and arrangement for the entire unitary structure, and for the filtering apparatus, gates, and inlet and outlet pipes necessary. All had to be adapted to the combination. The fact that De la Coux suggested it might be done is not enough. It was no more efficient than the suggestion which, in Herman v. Youngstown Co., 191 Fed. 579, 112 C. C. A. 185, we thought not enough to negative invention.

The defendant is using the structure of claim 11, as we interpret that claim. Its structure embodies, just as Greth's device does, a gate

10 For illustrations of rule that adding an element to an existing structure may or may not be invention, see Kellogg v. Dean (C. C. A. 6) 182 Fed. 991, 996, 105 C. C. A. 545; Houser v. Starr (C. C. A. 6) 203 Fed. 264, 272, 121 C. C. A. 462. See, also, Sly v. Russell (C. C. A. 6) 189 Fed. 61, 66, 110 C. C. 625.

shutting the filter off from the settling compartment, a discharge pipe carrying away to the sewer the overflow from the top of the filter when it is washed, and the ordinary outlet pipe from the bottom of the filter, usually carrying away clear water, but which, by suitable connection, could be made to receive the washing water and force it up from the bottom of the filter bed. That the only time when its operation was observed by witnesses, defendant was cleaning one filter at a time, cut out from the settling tank, by washing the same with a hose instead of by water reversed through the discharge pipe, and considering that the defendant had the complete device capable of use, just as contemplated, by turning a valve or adding the water connection, is not vital. We think it did not escape infringement if it did in fact use the device only in a less perfect and more awkward way. The claim does not specify nor necessarily imply the precise method of cleaning.

The decree must be reversed and the record remanded, with instructions to enter the usual decree for injunction and accounting on claim 11, provided that, within 30 days after the filing of the mandate, complainant has made disclaimer under claim 10 according to the practice established in this circuit.[11] The appellant will recover costs of this court, but not, up to this point, in the court below.[12]

[11] Herman v. Youngstown (C. C. A. 6) 191 Fed. 579, 583, 112 C. C. A. 185.
[12] Houser v. Starr (C. C. A. 6) 203 Fed. 264, 275, 121 C. C. A. 462.