CADWELL et al. v. FIRESTONE TIRE & RUBBER CO.

(District Court, E. D. New York. June 7, 1926.)

Equity 2062.

1. Patents ⟨⟩167(1)—Meaning of words used in claims must be determined from specification.

The court must look to the specification of a patent to find what the patentee meant by the words used in the claims.

2. Patents ⟨⟩235—Structure may be within letter of claims and yet not infringe, if principle of operation has been changed.

A structure does not infringe a patent, though within the letter of its claims, if the principle of operation has been so far changed that the claims, literally construed as applied thereto, do not represent the actual invention of the patent.

3. Patents ⟨⟩157(2).

Claims of a patent, if possible, must be construed to differ in matter of substance.

4. Patents ⟨⟩120—Mere difference in language without difference in mechanical structure, does not avoid double patenting.

A mere difference in language, covering no mechanical structure different from that of a prior patent to the same patentee, does not prevent the later patent from being void for double patenting.

5. Patents ⟨⟩328—Cadwell, 887,997, claims 4, 7, 9–11, 13–15, for 'improvement in vehicle tires, held not infringed.

The Cadwell patent, No. 887,997, for improvement in vehicle tires, is for a very re-

stricted improvement over the prior art, and must be given a strict construction. As so construed, claims 4, 7, 9, 10, 11, 13, 14, and 15, *held* not infringed.

In Equity. Suit by Edwin B. Cadwell and others against the Firestone Tire & Rubber Company. Decree for defendant.

Albert T. Scharps, of New York City (Norris Kirschstein, of New York City, of counsel), for plaintiffs.

Albert L. Ely, of Akron, Ohio (Charles Neave and Stephen H. Philbin, both of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is a patent suit. The plaintiffs allege the infringement by the defendant of United States letters patent No. 887,997, issued to Edwin B. Cadwell, assignor of one-third to Frank Johnston and one-third to Frank M. Ashley, for improvement in vehicle tires, granted May 19, 1908.

Frank Johnston having died subsequently to the issuance of said patent, the plaintiffs Elwood C. Johnston and William D. Johnston became his successors in interest to his one-third.

This suit was started several months before the expiration of the patent, but it had expired at the time of the trial, and therefore the only relief now sought is the usual accounting.

The defendant has answered, interposing the defenses of invalidity and noninfringement.

This action is based on claims 4, 7, 9, 10, 11, 13, 14 and 15, which read as follows:

"4. A tire having recesses in its sides V-shape in form and constructed to contract under tread pressure, and in staggered relation to each other, and presenting an unbroken tread surface, substantially as described."

"7. A tire having recesses in its sides extending and contracting toward the center of the tread, said recesses being spaced from each other less than the width of the tire, the said tire presenting an unbroken tread surface, substantially as described."

"9. A tire having recesses in each of its sides extending and contracting toward the center of the tread and spaced longitudinally thereof and located below the tread surface, substantially as described.

"10. A tire having recesses in its sides extending and contracting toward the center of its tread and located below the tread surface thereof, and spaced from each other at a distance less than the width of a tire, substantially as described.

"11. A tire having V-shape recesses in its sides extending and contracting toward the center of its tread and located below the tread surface thereof, and spaced from each other at a distance less than the width of the tire, substantially as described."

"13. A tire having a plurality of recesses in each of its sides which terminate near the center thereof and are adapted to contract under tread pressure, said tire presenting an unbroken tread surface substantially as shown.

"14. A tire having a plurality of recesses in each of its sides which extend less than the width of the tire and are adapted to contract under tread pressure, said tire having an unbroken tread surface substantially as shown.

"15. A tire having recesses in its sides which extend less than the width of the tire and contract in area as they recede from the surface and spaced from each other longitudinally."

The words "unbroken tread surface" appear in claims 4, 7, 13, and 14, but such words do not appear in claims 9, 10, 11, and 15.

The patent in suit is for an improvement on patent No. 846,453, issued to said Cadwell on March 12, 1907, on an application dated March 24, 1904, serial No. 199,676, and this appears on the face of the patent in suit, in which the patentee said:

"In my application filed March 24, 1904, serial No. 199,676, I show cells and recesses formed in the tire as shown in the present drawings, but in said prior forms I do not show an unbroken tread surface. In the present case I secure many of the advantages of the tire set forth in the above-named application and some distinct advantages due to preserving the tread of the section in unbroken continuity."

The application for the patent in suit was filed May 5, 1905, and therefore the applications were copending until the issue of the earlier patent, and plaintiff raises the question whether the earlier patent can be considered as part of the prior art.

This question, however, does not seem to me to be an open one, because Circuit Judge Lacombe, writing for the Circuit Court of Appeals of this circuit, in an action brought by Cadwell v. Motz Tire & Rubber Co., 224 F. 967, at page 968, 140 C. C. A. 459, 460, said:

"But the prior art also contains a patent to Cadwell himself for the structure, with broken tread, to which he refers in the specifications of the patent in suit. This prior patent is No. 846,453, issued to Cadwell,

March 12, 1907. Except that in the patent in suit the side recesses do not extend upward, and therefore the tread is unbroken the two structures are identical. In substance, Cadwell has merely surrounded his old tire with a rubber tread which covers over the recesses and presents, upon rotation, a flat surface to the ground. It may be that the addition of this unbroken tread was a patentable improvement—we need not decide that question now—but the fact that Patent Office so decided and issued a patent (No. 887,997) for the improved device does not eliminate the structure shown in the earlier patent from the prior art. What has happened is this: Cadwell has added to the novel combination shown in 846,453 a flat-faced unbroken tread. * * * "

The opinion last quoted does not seem to contradict the established rule of the Second Circuit as contended by plaintiff. Davis-Bournonville Co. v. Alexander Milburn Co. (C. C. A.) 1 F.(2d) 227, 232.

Defendant offered in evidence the following prior patents:

United States patent No. 514,708, to Finnigan, for carriage wheel, dated February 13, 1894, discloses holes or recesses which extend all the way through the tire from side to side to give it cushioning effect, and the tread surface is unbroken, being practically flat transversely.

United States patent No. 693,661, to Lober, for vehicle tire, dated February 18, 1902, discloses an interior air chamber to be filled through the air valve with compressed air, and also recesses in its sides separated by buttresses or pillars, over which recesses the tread surface of the tire extends.

United States patent No. 695,394, to Hird, for cushion tire, dated March 11, 1902, discloses a combination tire described by the patentee in the specification of said patent as follows:

"The invention consists in a core composed of two grades of rubber which are cast in one continuous piece to form the circle of the tire, said core provided with concave sides which are divided by ribs situated equidistant apart and extending radially with the axial center of the core, so arranged to expose a series of cells opposite of each other throughout the circle of the core, in combination therewith of a casing consisting of fabric and strips of rubber of a size to encircle the said core, so that when placed in a suitable flask and given the proper degree of heat the said rubber parts unite and form a continuous tire. * * * "

The recesses of the Lober patent are sealed by the casing, and thus act, not only as chambers to permit the flow of the rubber, but as confining cells or pockets giving a pneumatic effect of the same sort as that given by the cells at the base of the tire of the patent in suit.

United States patent No. 697,033, to Stein, for vehicle tire, dated April 8, 1902, discloses a tire having cushioning chambers, variously arranged holes or recesses, extending longitudinally for the purpose of getting the cushioning effect.

United States patent No. 752,891, to Dryden, for rubber tire, dated February 23, 1904, discloses a tire with its head surface notched or recessed at opposite sides to render the tire more yielding and give a cushioning effect, and also to get the antiskid effect and increased friction. The notches or recesses may be staggered.

United States patent No. 763,909, to Krotz, for rubber tire, dated June 28, 1904, discloses a tire having narrow pockets arranged preferably alternately on opposite sides of the tread, and preferably extending near or past the center of the tread and down and out near the point where the rubber leaves the channel side. Other forms are shown in which the pockets extend a little beyond and in one not quite to the center, in some staggered, and in another opposite each other.

United States patent No. 769,172, to Krotz, for rubber tire, dated September 6, 1904, discloses a tire with recesses which extend all the way across the tire and from the face of the tread down to the channel in which the tire is seated.

United States patent No. 772,636, to Swinehart, for vehicle tire, dated October 18, 1904, discloses a tire having continuous recesses extending all the way around the sides of the tire to give the cushioning effect. The patentee says in the specification:

"A solid rubber tire wears well and stands up for a long period of time under the heaviest of loads and when driven at high speeds, and makes the safest and most practical tire, providing that a high degree of cushioning character and a wide traction surface is also present."

British patent No. 4770, A. D. 1891, to Beilby, for improvements in tires for cycles, accepted January 9, 1892, discloses a tire with holes extending all the way through the tire from side to side to give it the cushioning effect, and with an unbroken convex tread surface.

British patent No. 9884, A. D. 1893, to

Coxon and Wilkinson, for an improved tire for bicycles and light carriages, accepted December 2, 1893, discloses a tire with cushioning holes which are shown in various shapes and a tread which is convex.

United States patent No. 846,453, to Cadwell and others, for tire, dated March 12, 1907, discloses a tire in the tread and sides of which are formed grooves or recesses spaced in a longitudinal direction distant from each other less than the width of the tire, and with cells arranged in the base of the tire. These grooves or recesses, as shown by the patent, may be placed opposite each other or in a staggered relation to each other, and such grooves or recesses may, when placed opposite to each other, extend toward the center of the tread, and when staggered they may extend across the center of the tread. Recesses V-shaped are also shown. The tire may also be composed of separable sections. The patentee, in order to show the advantage of having the cavities or recesses extend up to the tire surface or tread surface of the tire, says in the specification:

"It is a further object of my invention to increase the tractive effort and prevent slipping on wet pavements and the like, while at the same time maintaining the longitudinal strength. * * * *"

And also:

"The recesses formed in or near the surface of the tread of the tire increases the tractive qualities of the same and prevents the tire from slipping on wet pavements, both of which are important."

Consideration of the prior art shows that every element of the claims of the patent in suit on which the instant suit is based is old and was well known to the art, and that all that Cadwell did in his second patent, the patent in suit, was to add a flat-faced unbroken tread to the novel combination shown in his earlier patent No. 846,453. This seems to be conceded by Cadwell, because, in the specification of the patent in suit, he, speaking of patent No. 846,453, says:

"In my application filed March 24, 1904, serial No. 199,676, I show cells and recesses formed in the tire as shown in the present drawings, but in said prior forms I do not show an unbroken tread surface. In the present case I secure many of the advantages of the tire set forth in the above-named application and some distinct advantages due to preserving the tread of the section in unbroken continuity."

No tires appear to have been manufactured under the patent in suit, because the tires manufactured by Swinehart were certainly not manufactured under its teaching. This clearly appears by a comparison of the Swinehart tire with the Motz tire, which was held by the Circuit Court of Appeals of this circuit not to infringe. Cadwell v. Motz Tire & Rubber Co., supra.

The art was a crowded one, and the patent in suit added little if anything to it, and therefore should be strictly construed so as to protect only the particular form of improvement made by Cadwell with a narrow range of equivalents.

Plaintiff contends that the words "unbroken tread surface," which appear in claims 4, 7, 13, and 14, and as used therein, are intended to define a solid, continuous circumferential wall of rubber, forming in part a circumferential inclosure for the recesses, and in part the abutments there between; and that it was this solid mass of rubber that Cadwell designed for the purpose of providing the necessary circumferential strength and necessary resistance under heavy loads.

[1] This contention is not in my opinion sustained by the specifications of the patent in suit, and we must look to the specifications to find what the patentee meant when he used the words in question, because it is not the meaning of the words as defined in the dictionary that controls, but what the patentee meant when he used the words in the patent.

Of course the patentee was not bound to set forth in the patent all the benefits and advantages of the "unbroken tread surface," but, when he did set forth certain benefits and advantages which could only flow from having the tread surface smooth and unbroken— that is, without any notches, recesses or cuts therein—it must be assumed that he so intended to define "unbroken tread surface." In the specification of the patent in suit the patentee says:

"By maintaining the tread section unbroken, I prevent the tire from collecting dirt, gravel, and mud and throwing same when the vehicle is moving rapidly, which is objectionable."

Clearly the benefit or advantage which the patentee so claims for his tire because of its unbroken tread surface could not be obtained except by a tire having a smooth tread surface in which there were no notches, recesses, or cuts, and therefore the defendant's tire, of which complaint is made in this suit, does not employ an unbroken tread surface because in its tread surface there are notches on the tread design formed which do cause the tire to collect dirt, gravel, and mud, and throw

the same when the vehicle is moving rapidly, although by reason of such notches on the tread surface the defendant's tire possesses the advantage of being, as some manufacturers say, "geared to the road," or, as it is commonly called, of being a "nonskid tire."

I am further of the opinion that plaintiff's expert is in error in his contention as to the meaning of "unbroken tread surface" as used by the patentee in the patent in suit, because a solid, continuous, circumferential wall of rubber, forming in part a circumferential inclosure for the recesses and in part the abutments therebetween, for the purpose of providing the necessary circumferential strength and necessary resistance under heavy loads, was not required, as the tires in question were designed for two-ton trucks, and tires with broken tread surfaces are used successfully on caterpillars of much greater weight.

The defendant's tire does not have an unbroken tread surface, as the same is defined in the patent in suit, and therefore defendant's tire, for that reason if no other, does not infringe claims 4, 7, 13, and 14 of the patent in suit.

It is to be noted that the patentee in the patent in suit retains the cells in the base of the tire which formed one of the elements of the patentee's earlier patent, and that the said cells have a definite function in the operation of the tire of the patent in suit, although such cells are not specifically claimed as one of the elements of any of the claims of the patent in suit on which this suit is based. No cells are found in the base of the defendant's tire.

It is true that there are recesses in the sides of both the tire of the patent in suit and the defendant's tire, but the cells are reversed in shape, the narrower portion of the opening of the recess being near the surface of the tread and the wider portion of the opening being nearer the base in the patent in suit, while the wider portion of the opening of the recess is nearer the tread surface, and the narrower portion is nearer the base in the defendant's tire; and this reversal of the position of the openings or recesses in the sides causes the recesses to function differently in the two tires.

The provision for recesses in the side of a tire was not new with Cadwell; on the contrary, as I have shown, such recesses for the same purpose, of permitting the easy flow or displacement of rubber, were found in the prior art.

[2] Plaintiff attempts to show infringement by the defendant by trying to literally read claims 9, 10, 11, and 15 on the defendant's structure, but this does not seem to me to be the proper test in the suit at bar, because, even though the plaintiff could bring the defendant within the letter of the claims of the patent in suit, the defendant could not be adjudged an infringer if it has so far changed the principle of the device that the claims of the patent, literally construed, have ceased to represent the actual invention of the patent in suit. Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 568, 18 S. Ct. 707, 42 L. Ed. 1136.

In the former case (Cadwell v. Motz Tire & Rubber Co., supra, at page 968 [140 C. C. A. 460]), the Circuit Court of Appeals said:

"We find no anticipation of the particular combination of recesses and cells which Cadwell disclosed, and are inclined to hold his type of tire patentable."

It therefore appears that the combination of recesses and cells constituted the novel feature and invention of the Cadwell patent, and therefore, when Cadwell omits the cells within his tire he destroys the object of his invention.

Passing over, however, the question of anticipation of any claims from which the cells are omitted, it still remains a fact that the patent in suit is not, in any event, a pioneer patent, but is a very restricted improvement, if it be an improvement over the prior art, and must be given a strict construction.

For many years it has been well known in the art that, when a tire is placed under a load, the rubber will flow or be displaced in the avenue of least resistance, and that the cushioning qualities of the rubber will be enhanced by providing apertures or recesses in the tire body.

The great difference between the patent in suit and defendant's tire is that in the patent in suit the action or flow of the rubber is distributed throughout the whole of the tire body, and in the defendant's tire the action is confined at the tread.

The action or flow of the rubber in the patent in suit is distributed throughout the cross section of the tire, while in the defendant's tire the action is concentrated outwardly at the tread of the tire, and the defendant's tire accomplishes exactly the opposite purposes and functions from that of the patent in suit.

In the tread of the defendant's tire there are notches forming the tread design, the deeper ones being the Y-shaped notches directly over the buttresses or struts, and, while

these notches have more than one purpose, the principal purpose is to equalize the stresses in the tread of the tire, since without the depressions above the buttresses the pressure would be greater on the road surface and in the tire above the buttresses than at the opening, because it yields at the opening, and the notches directly above the buttresses tend to produce uniform weight and give a nonskid effect.

The tread of the patent in suit is continuous, and, in a tire constructed in accordance with the patent in suit, the effect on the flow of rubber would be that the intensity of pressure would be slightly greater above the buttresses than above the openings.

The abutments or struts in the side of the defendant's tire are narrower at the top or tread portion of the tire and wider at the base of the tire. This furnishes a greater supporting area at the base of the tire and gradually tapers down the stresses acting within the tire so that there shall be an absence of movement at the base of the tire, as the greatest movement should be confined as near the tread as possible.

The side views of the patent in suit, as shown in figures 1 and 6, show the abutments wider at the tread portion and narrower at the base portion, which would tend to drive the action downward toward the base of the tire, and, as the cells indicated by the letter *C* are located directly beneath the abutments, that would tend to further carry the action into the base of the tire.

Plaintiff contends that defendant's claim that its tire functions in a different manner from the plaintiff's patented structure, in that in its tire the action is at the tread and away from the base, cannot possibly be true, and yet we find in the prior art, in the Krotz patent No. 763,909, that the patentee made exactly the same claim for his patent as defendant does for its tire, for at page 1, lines 50–55, he says:

"The pockets not only provide a place into which the rubber can flow, but break up the longitudinal movement, so as to keep it away from the base and its fastenings and retaining channel."

Plaintiff further contends that the Y-shaped recesses in the face of the tread of the defendant's tire fill up under the load. This was denied by the defendant, and I must agree with the defendant, for to do otherwise I should be compelled to utterly disregard what I see daily on the dirt roads where I reside.

It may well be true that, if used long enough, the recesses on the face of the tread of the defendant's tire would be so worn down as to no longer function, but that would not constitute infringement, because it would not be the normal intended use of the tire. Elyria Nat. Rubber Heel Co. v. I. T. S. Rubber Co. (C. C. A.) 263 F. 979. When the recesses had been worn down to that degree, it would be a warning to a user of a nonskid tire that it was time to get a new one.

The recesses in the side of the defendant's tire, located below the tread surface, are not the same in shape as in claims 7, 9, 10, 13, 14, and 15 of the patent in suit, but are rounded in the same fashion as the recesses in the Motz tire.

The V-shaped recess in the sides of the tire, constructed to contract under tread pressure called for in claim 4, and extending and contracting toward the center, called for in claim 11 of the patent in suit, is the V-shape referred to at page 1, line 71, of the patent in suit, wherein the patentee says: "In figure 1 I show the recesses formed V-shape."

[3] That figure is the side elevation of the patent in suit, and shows the outer configuration of the recess to be V-shaped, and this is what is meant, and not extending and contracting toward the center of the tread; otherwise it would be impossible to differentiate between claims 10 and 11, and we must construe the claims to differ in a matter of substance, if possible. Wm. B. Scaife & Sons Co. v. Falls City Woolen Mills, 209 F. 210, 214, 126 C. C. A. 304.

I therefore find that claims 9, 10, and 11 are not infringed.

Claim 15 is clearly void for double patenting, unless it be limited to cover only recesses of the same shape and arranged as shown in figures 1 and 6 of the patent in suit, because the earlier Cadwell patent, No. 846,-453, and Krotz patent, No. 763,909, both show recesses which extend less than the width of the tire and contract in area as they approach the center of the tire, and of course the recesses are spaced from one another. The proof of this seems to be found in the fact that you could not manufacture the structure of patent No. 846,453 without infringing upon claim 15 of patent No. 887,-997, the patent in suit, unless claim 15 be so limited as aforesaid.

[4] A mere difference in language, covering no mechanical structure different from that of the prior patent, does not relieve the later patent from being held void on the ground of double patenting. Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121.

If claim 15 is limited as hereinbefore suggested, then the defendant does not infringe, because the recesses of the defendant's tire differ from those of the tire of the patent in suit, not only in shape, but by reason of the different arrangement of the narrower and wider openings of said recesses, causing the defendant's tire to function in a different manner from the plaintiff's patented structure.

[5] Defendant has produced and marketed in quantities the tire of which complaint is made, while so far as I can find from the record no tires constructed in accordance with the patent in suit have ever been manufactured, because clearly the tires produced by Swinehart were not manufactured in accordance with the teaching of the patent in suit.

The patent in suit has added nothing of value to the art, and its claims should cover only what the patentee has invented, and defendant should not be compelled to pay tribute simply because it might be held that the language of the claims is broad enough to cover his successful structure. Bradford v. Belknap Motor Co. (C. C.) 105 F. 63; Westinghouse E. & Mfg. Co. v. Toledo, P. C. & L. Ry. Co., 172 F. 371, 97 C. C. A. 69; Hammond v. Marmon Automobile Co. (D. C.) 300 F. 803.

The defendant's tire does not infringe any of the claims of the patent in suit, on which this suit is based, and therefore it is unnecessary to give further consideration to the defense of invalidity.

A decree may be entered in favor of the defendant against the plaintiff, dismissing the complaint with costs.