AMERICAN TOBACCO CO. v. STREAT.

(Circuit Court of Appeals, Fourth Circuit. November 3, 1897.)

No. 210.

1. PATENTS—COMBINATIONS—NOVELTY AND INVENTION.
   The fact that every element of a combination was well known at the date of a patent does not show lack of invention, if such elements were then for the first time utilized in a new combination, so as to produce new results.

2. SAME—PATENTABLE COMBINATION.
   An article manufactured in a machine in the manner and for the purposes contemplated when the machine itself was made cannot be considered a part of the machine itself, so as to constitute an element in the combination covered by a machine patent.

3. SAME—TEST OF INFRINGEMENT.
   A device cannot be held to be an infringement unless it would have been held, if used earlier than the patent, to have been an anticipation thereof.

4. SAME—CIGAR MAKERS' IMPLEMENTS.
   The Streat patent, No. 290,811, for improvements in "cigar makers' implements," and which covers a combination in which a clamp and a rolling apron are the characteristic elements, construed, and held valid, and not infringed by a machine from which the rolling apron is absent.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia.

This was a suit in equity by Thomas Streat against the American Tobacco Company for alleged infringement of a patent for improvements in cigar makers' implements. In the circuit court a decree was entered sustaining the patent, finding infringement, and granting the usual relief. The defendant thereupon appealed to this court.

Charles S. Stringfellow, M. B. Philipp, and W. W. Fuller, for appellant.

Rutherfoord & Page, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

GOFF, Circuit Judge. On the 25th of December, 1883, the United States granted to Thomas Streat letters patent No. 290,811, for improvements in "cigar makers' implements." On the 13th of June, 1893, the United States granted letters patent No. 499,488, to Philip Whitlock, assignor to the American Tobacco Company, for "binder clamp for cigar bunching machines." The bill of complaint in this cause was filed by the said Thomas Streat on the 17th day of April, 1893, in

which an injunction was prayed for to restrain the American Tobacco Company from making, selling, or using a certain device and machine, which it was claimed was made in imitation of, and embodied all of the essential elements of, the machine described in the letters patent so issued to Streat. An accounting, with the relief usual under such circumstances, was prayed for. The answer of the defendant was filed on the first Monday of August, 1893, to which the complainant, on the first Monday of October following, filed his replication. The testimony was duly taken, and the case finally heard on the 17th of December, 1896, when a decree was entered by the court below adjudging that the letters patent issued to Thomas Streat were valid, and that the defendant infringed the same. The defense relied upon by the defendant below was lack of patentable novelty in the invention described in the complainant's patent, in view of the state of the art; anticipation by prior patents; and noninfringement. During the taking of the defendant's testimony it was disclosed that the machine used by it, and which it was claimed was an infringement of the complainant's patent, was covered by and described in the said letters patent No. 499,488, which were issued after the institution of this suit, to wit, June 13, 1893, although the application for said patent was filed in the patent office on the 31st of December, 1892, before the bill was filed in this cause. From the said decree of December 17, 1896, the defendant appealed.

In the specification forming part of the letters patent No. 290,811, it was set forth that the invention consisted of certain mechanism whereby means were provided for assisting in obtaining results desired in the application of the wrapper to cigarettes. The patentee stated the difficulty which his invention was intended to overcome was, in substance, as follows: In the manufacture of cigarettes having a tobacco wrapper, difficulties are experienced in obtaining a smoothly rolled cigarette, in which the wrapper is free from wrinkles, and a cigarette of sufficient density to prevent its mashing or breaking when packed. This was due to the fact that the wrapper, whether of paper or tobacco, was free to yield to any inaccuracy in the operation of rolling, or to any irregularity in the pressure applied when the cigarette is being rolled, causing that portion of the paper not held by the hands to twist, wrinkle, or pucker, which naturally detracted from the marketable value of the cigarette. He also stated in said specification that the imperfect rolling was frequently due to the unequal distribution of the filler, the quantity thereof being greater in one part of the cigarette than another, which gave rise to the unequal pressure during the operation of rolling, and caused the wrapper to wind unevenly, and thereby wrinkle. When tobacco was employed for wrapping, difficulties were greater, because it was damp and elastic, and therefore liable to stretch at the slightest inequality of pressure or strain. It was claimed that the invention would remedy such difficulties by providing a method by which one edge of the wrapper would be held tight and smooth, while the other edge was turned over the filler and rolled around it, thereby preventing such wrapper from wrinkling. To overcome these difficulties, the patentee provided in his patent for the use of a clamp

to hold one edge of the wrapper smooth while the other edge was being rolled about the tobacco, and an apron, usually made from a strip of strong paper, upon which the wrapper rested, and which was used for the purpose of applying the pressure of the fingers to the wrapper and tobacco in the rolling process, whereby the pressure was more evenly distributed over the surface of the cigarette, and the wrapper was prevented from yielding unduly because of the unequal strength. The apron so provided for was glued and rigidly held to one end of the table, and was free at the other end. The clamp consisted of a pivoted plate, spring pressed upward, which was connected by rod to a treadle, by which it could be depressed and caused to grasp one edge of the wrapper between it and the fastened end of the apron. The clamp was operated to secure the wrapper by the foot of the operator acting upon the treadle, thereby leaving both of his hands free for use in the rolling of the cigarette. These facts are fully illustrated by drawings made part of the patent and referred to by figures and letters.

The patentee, after having described his invention, set forth his claims as follows:

First. In a cigar makers' implement, a clamp, a rolling apron, a stationary support or table, upon which said clamp and apron, together with the wrapper and filler, are supported, and to which one edge of the apron is secured, the opposite edge lying free thereon; a means for depressing the clamp and holding the same in contact with the fixed edge of said apron, when said elements are combined for co-operation, as described for the purpose specified. Second. In a cigar makers' implement, a clamp, a rolling apron, A, a flat support or table for said clamp and apron, means for depressing the clamp upon one end of the apron, and holding it in contact therewith while the cigarette is being rolled in the free end of said apron, A, and means for automatically raising the clamp out of contact with the apron; said parts being combined and constructed for

co-operation, substantially as described for the purpose specified. Third. The combination of the table, T, rolling apron, A, pivoted clamp, C, and treadle, T', are constructed to operate substantially as and for the purpose shown and described. Fourth. The combination of the table, T, rolling apron, A, pivoted clamp, C, springs, S, and treadle, T', all constructed to operate substantially as shown, and for the purpose described.

We agree with the court below that the patent issued to Streat was good and valid in law. The fact that each and every element of the combination claimed by Streat was at the date of his patent old and well known was not sufficient to deprive the invention claimed by him of novelty, for most of the inventions of the present day consist of the utilization and adaptation of mechanical appliances that are themselves old and well known. The clamp and the rolling apron had both been in use before the date of the patent to Streat, and were, in fact, well known in the art, but they had not been used theretofore in the manner and for the purpose set forth in the specification of said patent; and it was in and by this new use of devices, in and of themselves not novel, that his invention consisted. Using an old process and utilizing a well-known device, by combinations which produce results not theretofore accomplished by the said process or device, is in fact invention.

Finding, as we thus do, with the court below, that the complainant's patent was valid, it now becomes necessary to consider and determine whether or not the device or machine used by the defendant below was an infringement of said patent. The defendant has not used the apparatus complained of in the manufacture of cigarettes, which seems to have been the only purpose for which the machine described in the Streat patent was intended, but has used it only in manufacturing cheroots and cigars, in the making of what is called "bunches." A short statement of the mode of manufacture shown by the evidence will enable us more clearly to understand the uses to which the machinery now in question was put. A cigar or cheroot is composed of the core, binder, and wrapper. The core consists of tobacco, sometimes called "scrap," which is divided into small pieces and formed into the shape of the cigar by the application thereto of the "binder." The binder is the leaf of tobacco upon which the filling or scrap is placed, and which, after being wound about the same, is pasted so as to cause it to retain its shape temporarily. A single leaf of tobacco is used for a binder if the same is wide enough to go around the bunch twice; but if not sufficiently wide, or if it is weak or perforated with holes, it is re-enforced by a second leaf, thus making a double instead of a single binder. The bunch thus made by the application of the binder is then transferred to a mold in which, while still moist, it is pressed and given the shape of the completed cigar. It remains in the mold until it becomes dry, when it is taken by the operator who applies the wrapper, thus making the cigar complete and ready for the market. It is well to remark in this connection, and before considering the machine used by the defendant, that we think it is clear that the function of the device patented by Streat was to aid in applying the final wrapper to the cigarette. In cases where the molds were not used, but where the article was turned out complete by hand, the

apron was used to preserve the wrapper, and to give it a perfect and finished appearance. The apron would be of no practicable utility if the bunches were to be molded into shape. We think that the patent itself, the conduct of the patentee, and the action of those who used his machines, clearly indicated that the device so patented was intended for the purposes we have pointed out.

The Streat device was first used for the making of cheroots complete, the patentee receiving a royalty of 75 cents per 1,000. These cheroots were made for the period of about five months, when, as they were not acceptable to the market, their manufacture was discontinued. The apron specified in the Streat patent was used in making the cheroots so found to be unsaleable. After the making of the complete cheroot on the Streat device was discontinued, his machine, the apron being left off, was used for making "bunches" for cheroots, both by Mr. Streat and Mr. Whitlock, who then owned the factory now operated by the defendant. During the six years previous to the institution of this suit, many of such machines without the apron were so used. It is the combination of the clamp with the apron, and the manner of using the former and attaching the latter, that constituted the novelty of Streat's invention, and justified the patent office in issuing the letters patent to him. That the apron is a vital element in the claim for the patent was shown by the record made in the patent office during its prosecution, when it was stated that it (the apron) "is the only feature of novelty in the device, and, were it omitted, a mere paper clip or clamp would be left."

The contention of counsel for the complainant below that the apron is only essential to the first claim set forth in the patent, and not required in the second, third, and fourth, is, in our judgment, without force, as the apron is the main feature in the device, and the controlling element in the combination that was patented. The apron referred to in the second, third, and fourth claims is the rolling apron, A, indicated by the letter "A" in the drawings accompanying the patent, and is an essential part of each claim, as well as the vital part of the patent itself. Parry Manuf'g Co. v. Hitchcock Manuf'g Co., 58 Fed. 402; Weir v. Morden, 125 U. S. 98, 8 Sup. Ct. 869; Hendy v. Iron Works, 127 U. S. 370, 375, 8 Sup. Ct. 1275; Knapp v. Morss, 150 U. S. 221, 228, 14 Sup. Ct. 81.

It follows, therefore, that, unless the machine used by the defendant employed a rolling apron or its mechanical equivalent in the manufacture of cigars or cheroots, there has been no infringement of the patent granted the complainant below. The evidence plainly shows that the defendant did not use an apron on any of the machines employed by it in its factory; that the machines used by it are without aprons, and are not used for making completed cheroots or cigars, but solely for the purpose of making "bunches." This is, in fact, admitted by the appellee; but it is claimed for him that the second wrapper used by the appellant is the mechanical equivalent of the apron described in the Streat patent, or, in fact, is the apron itself. In our opinion, the leaf of tobacco called the "second binder" is not the mechanical equivalent of the rolling apron described in the Streat patent,

which was evidently intended by the patentee to be a strip of strong paper—shown by the evidence to be, in practice, a strip of enameled cloth of sufficient strength to stand the strain of constant use—permanently fastened to the table, intended for continuous use, of greater strength than the tobacco leaf, the inherent weakness of which it was designed to obviate. But the second binder cannot be considered an element of the machine itself, as it is a part of the material used on the machine in the manufacture of the product offered for sale. We do not think that an article manufactured in a machine in the manner and for the purposes contemplated when the machine itself was made can be held to be a part of the machine which so produces it.

The supreme court of the United States, in the case of Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 Sup. Ct. 627, indicates quite clearly the solution of the question now under consideration. On this point we quote from the opinion in that case as follows:

"The first defense raises the question whether, when a machine is designed to manufacture, distribute, or deliver out to users a certain article, the article so dealt with can be said to be a part of the combination of which the machine is another part. If this be so, then it would seem to follow that the log which is sawn in the mill, the wheat which is ground by the rollers, the pin which is produced by the patented machine, the paper which is folded and delivered by the printing press, may be claimed as an element of a combination of which the mechanism doing the work is another element. The motion of the hand necessary to turn the roll and withdraw the paper is analogous to the motive power which operates the machinery in the other instances."

The machines used by the appellant are quite similar to the device covered by the patent issued to Philip Whitlock, though they differ from it in several particulars; but, as we are not now required to determine the validity of that patent, it will not be necessary to further consider the same. It is sufficient at this time to ascertain if the use of said machines constitutes an infringement of the Streat patent, and we hold that it does not. While it is true that the machine used by the appellant brings together several of the old devices which form part of the Streat combination, still it is also true that it omits other important parts thereof, and consequently there is no infringement. Schumacher v. Cornell, 96 U. S. 549; Palmer v. Village of Corning, 156 U. S. 45, 15 Sup. Ct. 381. The machine used by the appellee during the six years prior to the institution of his suit, without the rolling apron, A, attached thereto, was simply a clamp, and the combination thereof was without novelty, and not patentable; and an inspection of the model and drawings of the machines used by the appellant, claimed in the bill to be an infringement of the Streat patent, together with a study of the testimony taken concerning the same, shows that it also is simply and essentially a similar clamp, the object of which is to hold the edges of the "binder" in place while the filler is distributed on it, and the two rolled into a bunch. Neither one of the devices need an apron when used for the purpose of making bunches, and, as that of the appellant was made for and has been used for that purpose, no apron has been employed in connection with it. The apron of the Streat patent evidently was not intended for use in connection with

the making of bunches, but clearly its object was to enable the rolling of the cigarette to be performed without breaking, tearing, or wrinkling the binder.

The device used by the appellant cannot be held to be an infringement of the appellee's patent unless it would have been held—if used earlier than the patent—to have been an anticipation of the same; and certainly it is clear, if it had been set up as in prior use against the Streat patent, as it did not contain an apron used in the manner set forth in said patent, that it would not have been decreed to have been anticipation. Peters v. Manufacturing Co., 129 U. S. 530, 9 Sup. Ct. 389; Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81. The rule is now well established that "that which infringes if later would anticipate if earlier." Heating Co. v. Burtis, 121 U. S. 286, 295, 7 Sup. Ct. 1034; Grant v. Walter, 148 U. S. 547, 554, 13 Sup. Ct. 699; Gordon v. Warder, 150 U. S. 47, 14 Sup. Ct. 32.

It will be unnecessary for us to consider other assignments of error set forth by the appellant, as we find that the device used by the American Tobacco Company cannot be held to be an infringement of the Streat patent. It follows that there was error in that part of the decree of the court below finding infringement, and directing an accounting. Said decree is hereby reversed, and this cause is remanded to the court from whence it came, with instructions to dismiss the complainant's bill.