### HARTFORD et al. v. MOORE et al.

(Circuit Court S. D. New York. June 20, 1910.)

1. PATENTS (§ 27*)—INVENTION—ADAPTING OLD DEVICE TO NEW USE.
    A patent is not void as for a new use of an old thing, unless the old device can be used for the new purpose without material modification or change, and a very slight modification is often the result of a wholly new conception and invention.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 31, 32; Dec. Dig. § 27.*]

2. PATENTS (§ 40*)—INVENTION—ADAPTING OLD DEVICES TO NEW USE.
    Novelty of selection of old devices or elements, remote in structure and purpose, for a new use, may evidence patentable invention.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 47; Dec. Dig. § 40.*]

3. PATENTS (§ 328*)—INFRINGEMENT—SHOCK-ABSORBER.
    The Truffault reissue patent, No. 12,437 (original No. 695,508), for a shock-absorber for spring-supported vehicles, used extensively on motor cars, was not anticipated, and discloses patentable invention; also held infringed.

In Equity. Suit by Edward V. Hartford, George W. Hartford, and the Hartford Suspension Company against Harold J. Moore and Ruth H. Moore. Decree for complainants.

This is an ordinary bill upon a patent for a shock-absorber upon spring-supported vehicles. The commercial adaptation of the patent is the well-known Truffault-Hartford shock-absorber used extensively upon motor cars. The present patent is a reissue, No. 12,437, of January 16, 1906, of an original patent, No. 695,508, issued March 18, 1902. The device is simple in character, and merely consists of two arms each pivotally mounted upon one of the relatively moving parts of the vehicle, which are kept apart by the springs. These two arms are united at their free ends, and can be pressed together by a nut at any desired degree of friction exercised upon a washer introduced between them. In the commercial device the ends are enlarged to a considerable area. As the two relatively movable parts approach each other through the compression of the spring, these two arms move to a more acute angle. As the parts separate through the reaction of the spring, the arms assume a more obtuse angle. The friction caused by the rotation of the united ends together with the friction in the rotation of the fixed ends of each arm produces two results: First, it adds to the strength of the spring upon its compres-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sion, and, second, it in part prevents the too violent reaction of the spring. Thus the shock which is especially felt upon the rebounding of the spring is in part avoided.

The defendant's device is of substantially similar character; the details not being necessary to be stated. The claims in suit are as follows:

"I. In a vehicle, the combination with a supporting-spring between the parts of the vehicle movable relatively to each other, of rotating frictional means between the parts which provides a yielding resistance to movement, said means producing a retarding effect on the reaction of the spring, substantially as described.

"II. In a vehicle, the combination with the wheel thereof, the frame carried by said wheel and a spring interposed between said wheel and frame, of rotating frictional mechanism which provides a yielding resistance to the movements of the parts, said means serving to materially and uniformly exert a retarding effect on the said movements of the parts in both directions substantially as described.

"III. A retarding device for vehicle-springs comprising rotating friction members, adjustable clamping means, and means for connecting the rotating members to the parts of a vehicle movable relatively to each other, substantially as described."

Charles C. Linthicum and Clifford E. Dunn (A. J. Baldwin, on the brief), for complainants.

Cheever & Cox, for defendants.

HAND, District Judge (after stating the facts as above). Two questions are raised—one of anticipation and the other as to the validity of the reissue. Upon the second I am concluded by Hartford v. Hollander, 163 Fed. 948, 90 C. C. A. 308, which held distinctly "that the original patent covered the rotating device separately, as well as when acting in conjunction with the other devices." It is true that three years intervened between the original issue and the application for reissue, and this has been held in many cases too long a time to extend the patent, but an explanation is offered of the delay, and that explanation has once been sufficient for the Circuit Court of Appeals. That matter must, therefore, be regarded as settled in this court.

As to infringement, the operation of the defendant's patent is so like that of the patent in suit that no serious question can be raised about it. Indeed, I understand that Mr. Cheever at final hearing conceded that, if the claims are to be supported, the defendant does infringe. The question therefore becomes one of interpretation and validity. As the first three claims upon which here the complainant especially relies are not ambiguous when applied to the defendant's device, no need of interpretation exists, unless the prior art forces it upon me to save the patent. I shall therefore at once consider such anticipations as the art shows.

The complainant concedes that the Gibbs patent, No. 488,474, anticipates the broad claim to the use of frictional devices to retard and partially neutralize the reaction of springs in a spring-supported vehicle. The patent in suit, however, operates by the partial rotation of the friction area, and is differentiated functionally from Gibbs, first, by the constant area of friction surface; and, second, by the relatively limited movement of the friction surfaces. The defendant does not contend that Gibbs taken alone and with no other prior art is enough to deprive the patent in suit of invention, but he does claim that it gave the germinative idea upon which the patent in suit was

based. Gibbs does indicate the general conception of friction as applied to spring-supported vehicles and the patent in suit is not a pioneer. The defendant's theory is that the modifications of the patent in suit were immediately suggested by other disclosures read in the light of the fundamental idea shown by Gibbs.

The disclosures which the defendant cites as anticipating the patent are of several kinds. First come those which are used in spring-supported vehicles for example: Reinwald, 242,983, Murphy, 620,952, Klörstadt & Johnson, 655,247, Stubbs, 664,444, Hunter, 414,048. All of these could with slight modification be transformed into the patent in suit. They are all devices which are interposed between the movable parts of a spring-supported vehicle, and, when modified, they would have rotating frictional parts which would provide a yielding resistance to movement and several of them have adjustable clamping means. No one of them, however, would, as it stands, be an efficient substitute for the patent in suit, and no one of them was designed for the purpose of the patent. It is said of each one of them that "the tightening of a nut" would be enough to adapt them for the use in question, and, while this is not literally true in the case of any one, I should have no difficulty in finding that the patent in suit was only a nonpatentable modification of several of them were the thought apparent anywhere of their use as a shock-absorber. In each one by enlarging the friction area and tightening the nut—the function described in the claims—they would at once become operative, and the question therefore arises whether the patent in suit is not merely a new use of an old device. Nevertheless the device as described would not answer because in each case the joints in question are made as frictionless as possible. In the case of Stubbs it is true that rubber was inserted at the toggle joints, but I am satisfied with the explanation of the complainant's expert that rubber was placed there solely to prevent rattling as the specifications indicate. A patent is not void as the new use of an old thing only in case it can be used for the new purpose. Toplitz v. Toplitz, 145 U. S. 156, 161.[1] While the modification involved in tightening the nut may seem a very slight one, it nevertheless does change the structure, and it has been held many times that a very slight modification of structure is oftentimes the result of a wholly new conception and invention.

The suggestion of that adaptation the defendant says is to be found in the Gibbs patent which indicated friction as a means of retarding the spring reaction. But I do not agree that the ordinary skilled mechanic having in mind friction as a proper means for retarding spring reaction would have at once seen that the device in question could be adapted to perform that function. The very fact that in all of them the absence of friction was peculiarly necessary would, it seems to me, have turned away the mind of an ordinary man in looking for a friction device. It took a person of inventive faculty to see that by a modification adopting them to a diametrically opposed use rotary friction could be used for the same purpose as reciprocal friction was used in the Gibbs patent. It certainly cannot be necessary to repeat the well-known principle that it is no indication of noninvention that the device should seem obvious after it has been discovered.

[1] 12 Sup. Ct. 825, 36 L. Ed. 653.

Many great inventions are of this character, and the reason why the ordinary man does not discover them although they are so plain when some one else has done so is that habit has limited his power to see what he has not been accustomed to see, and his selective attention is fast bound by his past experience. In this case all suggestions of the device cited were, as I have said, away from the ideas of friction, and it took an unconventionally minded man to see the remoter analogies between the device and the patent in suit.

The following patents were frictional: Morse, 64,024, Norcross, 235,892, Taylor & Tyrrell, 393,039. But they were remote in suggestion from the patent in suit. It is true in the case of Morse and Norcross that they related to vehicles and vehicles of a kind normally carried on springs, but they related to a part of the vehicle which had nothing to do with the springs, and the problems of which were quite different from those of neutralizing spring action. They are, in fact, as remote from the patent as the friction by which the arms of mechanic's calipers are held at a fixed distance from each other. It certainly cannot be urged that any device containing rotary friction is suggestive of the patent in suit. Rather it is the very kernel of the invention to select rotary friction as a suitable means of solving this problem; and valid anticipations would be found only where that selection had once been accomplished. Taylor & Tyrrell, above mentioned, is of precisely the same kind. The friction at the joint was not used to modify the action of a spring and to absorb its shock upon the recoil, but it was a re-enforcement of the spring. Moreover, its very use upon a cash-car was so very remote from the suggested matter of the patent in suit as to make it unsuggestive in my judgment.

The two buffer patents, Westinghouse, 672,116, and the British patent, Turton and Root, fare no better. The Westinghouse patent was for use in taking up a part of the initial shock of a car-buffer. Undoubtedly in this case the friction device was circular in form, but it did not operate constantly because the series of opposite frictionless surfaces in the rotating wheel began at their maximum and ended at zero, at which point the wheel was clamped down again for a repetition, operating not constantly, but spasmodically. In this complicated mechanism I can see no suggestion whatever of the patent in suit except the fact that friction surfaces were used to modify the action of a spring. It seems to me much more likely that as an original proposition the complainant should have discovered his device from Gibbs alone than from this. Turton and Root is an almost equally complicated mechanism. The defendant concedes that, in so far as the friction arises from the operation of the two spiral shoulders against each other, it is not an anticipation, but he says that there is friction between the ends of the device and the abutments on which they act, which friction tends to prevent their rotation, and thus to modify the force of the recoil. It is somewhat doubtful just what the action of that friction is, and perhaps the best test was the practical attempt to use them in place of the complainant's device upon a motor car which showed they were idle. Whether or not the friction in question, which is constant in area, has an effect in preventing the natural resiliency of a spring, the device is of such a remote character

and apparently was so concealed from the inventor himself that it does not seem to be in any sense suggestive of the patent in suit.

The lamp-carrier (Jeffery, 454,171) is also remote in my judgment. Disregarding the controverted question as to whether the retardation upon the spring is due to the yielding of the bushing or to a real friction exercised between the parts, a question as to which I do not think the evidence permits any certain decision, the whole device was very remote in structure and in purpose from the patent in suit. Nor do I think it would have been suggested here at all had it not been that the lamp was to be used upon a bicycle.

There remains only one citation which is at all near to the device here in question, and that is Myers, 170,887. This seems to me a much closer reference than any other which the defendant makes, and, indeed, it would actually serve in substance for the patent in suit, if it were made larger than was necessary for the purposes for which it was invented. I do not mean to say that it is in structure precisely the same as the complainant's commercial device, but, if it were used upon a motor car, it would precisely answer all three of the claims which are here in question. It would consist of a rotating frictional means providing a yielding resistance to movement and producing a retarding effect on the action of the spring in either way. The free ends would be connected by a clamping device with friction material between them, and there would be means for connecting them to either of the relatively movable parts. This friction could be adjusted by the clamping means, and, although the device so used might not be in detail as effective as the commercial shock-absorber, it would be to all intents and purposes the same invention. Therefore a plausible argument may be made that the patent in suit is nothing but a new use for this old instrument without modification except that of size, which, of course, would be readily suggestible to any trained person. Yet, in spite of this similarity, I do not consider that it is a valid anticipation, because some one must have selected it for the purpose, and, as I have already said, novelty of selection is oftentimes a sure sign of patentable invention. The device in question was used to modify the action of a door spring. The question is whether the usual person with all the art before him would have thought of the possibility of applying such a device in modifying the action of a spring on a vehicle. Here again when once the suggestion is made it is simple and obvious, but the problem before a person seeking to modify the action of a spring upon a vehicle is one which of itself does not suggest the problem of modifying the problem of the spring door. Such a door when actuated by a spring slams to at once and catches, and there is no rebound of the spring even when the door has no catch. Moreover, such springs as used upon doors operate by uncoiling, and they have no rebound like that of an elliptical or helical spring which has been compressed. The device on doors was used to modify the action of a spring as it uncoiled and it had no use such as the patent in suit has. Therefore neither the matter nor actual problem was at all similar to that of the complainant's here, and it seems to me as much an invention to apply that kind of device to these circumstances as it was to apply the principle of friction calipers. Were not the novelty

of the application a valid test of patentability, no strictly combination patent could be valid, for in all such patents each element is old, and it may be said that each element is simply applied to a new use. Union Sugar Refining Co. v. Mathiesson, Fed. Cas. No. 14,397; Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L. Ed. 241; American Tobacco Co. v. Streat, 83 Fed. 701, 703, 28 C. C. A. 18. The formative conception of the application of old elements to a new purpose in which they are mutually interdependent requires more than a common-place mind. Moreover, even to use old tools in a new way may be a valid invention. Potts v. Creager, 155 U. S. 597, 608, 15 Sup. Ct. 194, 39 L. Ed. 275.

Therefore in this case it does not seem to me that, even with Gibbs in mind, the complainant has done only what an ordinary man might do, and I think the patent is valid. This conclusion is corroborated by the fact that until 1905 no device of any similar character appeared for use upon motor cars. No one will deny that there has seldom been a machine which has so quickly acquired such an extraordinary, almost miraculous, vogue as the motor car itself. During the last 10 years the industry which has grown up under the demand for these machines has become one of the largest in the country. Even their remotest details have been the subject of the most careful and intelligent experiment and scrutiny. It was well known that any man who could successfully add even a slight modification which would have advantages might make a great fortune. Certainly thousands and tens of thousands of skilled mechanics have become familiar with the whole mechanism, its needs, limitations, possibilities, and failures. Indeed, so thorough has been the adaptation to the present possibilities of the arts that the machine has now apparently reached its limit, and, except for some revolutionary changes, will probably remain substantially what it is. All this is common knowledge. Among the problems which have from the outset most troubled inventors was to modify the shocks resulting from high speed over rough roads, particularly in this country where the roads are bad. Especially was this true since the problem of spring shocks was connected with that of tires, the most difficult of all. This device has in a measure solved part of the difficulty of spring reaction, and, if the solution was obvious, why did no one of these skilled mechanics who have studied the machine inch by inch and screw by screw discover so simple a device? The pressing need for it existed for quite five years before it was discovered to the public. This is after all the best test of whether it was in the reach of the ordinary skilled artisan, and the defendant has contributed its own quota of assent to the utility of the device by what we are taught to be the sincerest commendation—a very frank imitation.

Under all the facts, I do not feel that there can be any doubt of the validity of the invention. Let the usual interlocutory decree pass.