RIVERSIDE HEIGHTS ORANGE GROWERS' ASS'N et al. v. STEBLER.

STEBLER v. RIVERSIDE HEIGHTS ORANGE GROWERS' ASS'N et al.

(Circuit Court of Appeals, Ninth Circuit.   February 13, 1917.)

No. 2772.

1. EQUITY ⬦⟶410(4)—MASTERS—EXCEPTIONS TO REPORT.
    Exceptions to reports of masters in chancery are in the nature of a special demurrer, and the party objecting must point out the error; otherwise, the part not excepted to will be taken as admitted.
    [Ed. Note.—For other cases, see Equity, Cent. Dig. § 910.]

2. EQUITY ⬦⟶410(1)—MASTERS—OBJECTIONS TO REPORT.
    Proper practice requires that objections to a master's report shall be taken in the trial court, that any errors discovered therein may be rectified by the court itself, or by a reference to the master for correction.
    [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 905, 914.]

3. PATENTS ⬦⟶308—SUIT FOR INFRINGEMENT—PROCEDURE.
    When complainant claims infringement by a modified structure made by defendant after the granting of an interlocutory injunction, the better practice is to present the issue by a motion for a supplemental decree, extending the injunction to the new structure.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 504–506.]

4. PATENTS ⬦⟶328—INFRINGEMENT—FRUIT GRADER.
    The Strain reissue patent, No. 12,297 (original No. 730,412), for a fruit-grading machine, used chiefly for sorting oranges, held not infringed by a modified machine made by defendant after his original structure was held an infringement.

5. PATENTS ⬦⟶234—INFRINGEMENT.
    A construction which, if earlier, would not anticipate, cannot infringe.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 370, 381.]

6. PATENTS ⬦⟶235—INFRINGEMENT.
    If the device of a defendant shows a substantially different mode of operation, even though the result of the operation of the machine remains the same, infringement is avoided.
    ⸱ [Ed. Note.—For other cases, see Patents, Cent. Dig. § 371.]

7. PATENTS ⬦⟶318(4)—INFRINGEMENT—MEASURE OF DAMAGES.
    Where a patent covers but one feature of a machine, which does not contribute to the whole machine its entire value as a marketable article, and the cost of the manufacture and sale of the patented feature and the net profit thereon are separately ascertainable, the damages recoverable by the owner of the patent from an infringer are limited to the profits he would have made on the sale of such feature.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 572, 573.]

8. PATENTS ⬦⟶318(6)—INFRINGEMENT—MEASURE OF DAMAGES.
    Where complainant was engaged in the manufacture and sale of such machines, in determining the net profits realized from the patented part, it is proper to charge against the sale price of such part a proportionate share of his overhead expenses.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 576.]

9. PATENTS ⬦⟶319(1)—INFRINGEMENT—ACCOUNTING FOR PROFITS AND DAMAGES.
    On an accounting for profits and damages for infringement, where the profits made by defendant were less than the damages sustained by complainant by reason of the loss of sales of the patented machine, he is en-

titled to recover the difference as damages, in addition to defendant's gains and profits.

[Ed. Note.—For other cases, Patents, Cent. Dig. §§ 578, 580.]

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benj. F. Bledsoe, Judge.

Suit in equity by Fred Stebler against the Riverside Heights Orange Growers' Association and George D. Parker. Decree for complainant, and both parties appeal. Modified.

Suit to restrain infringement of plaintiff's patent for a combination of certain elements in a fruit-grading machine and to recover damages for the infringement thereof. Plaintiff, Stebler, commenced suit on May 24, 1910, in the United States Circuit Court for the Southern District of California, Southern Division, against the Riverside Heights Orange Growers' Association, George D. Parker, and Parker Machine Works, to restrain the infringement of claims Nos. 1 and 10 of letters patent reissue No. 12,297 for a fruit-grading apparatus invented by one Robert Strain, plaintiff's assignor, and to recover damages for the infringement thereof. The defendants answered, denying the validity of the claims and the alleged infringement. The case thereafter came on for trial before the District Court for the Southern District of California, Southern Division, where a decree was entered on September 17, 1912, in which the court held reissue letters patent No. 12,297 to be good and valid in law, but found that the defendants had not infringed the same and dismissed the bill with costs to the defendants. Plaintiff appealed to this court, where the decree of the lower court was reversed, upon the ground that defendants' machine was an infringement of plaintiff's patent, and the cause remanded, with instructions to grant the relief prayed for. 205 Fed. 735, 124 C. C. A. 29. Thereafter, on November 7, 1913, pursuant to the mandate of this court, an interlocutory decree was entered in the District Court, setting aside the decree dismissing the plaintiff's bill theretofore entered in that court, and awarding plaintiff a perpetual injunction to restrain the infringement of his patent, decreeing that plaintiff "recover of the defendants, and each of them, the profits, gains, and advantages which said defendants, and each of them, have or has derived, received, or made, by reason of said infringement, and that complainant recover of the said defendants, and each of them, any and all damages which complainant has sustained or shall sustain by reason of said infringement by defendants, or either of them," together with costs, and appointing a master to take and state the account of said gains, profits, and advantages, and to assess such damages, and report thereon.

The plaintiff thereupon brought 27 or more suits in equity against a number of defendants, including the defendants, Riverside Heights Orange Growers' Ass'n and George D. Parker, appellants herein, charging them as infringing users of fruit graders which had been manufactured and sold by the defendants named, prior to the entry of the interlocutory decree in the court below. Thereupon the defendants petitioned the court below, alleging, among other things, that all the defendants in the suits were customers of the defendants named, and that the acts of infringement complained of and sought to be enjoined by the suits were the use by the said defendants of fruit graders manufactured by the defendants named and sold by them to the other defendants in the suits mentioned in the petition; that all such machines were subject to the accounting against the defendants to be had under the interlocutory decree. The prayer of the petition was that the plaintiff be enjoined from further prosecuting the suits set forth in the petition, and from bringing any additional suits of like nature against the customers of the defendants for the infringement of the letters patent owned by the plaintiff. The petition was heard and granted by the court below, restraining the prosecution of said suits and enjoining the filing or commencement of additional suits against the users of machines manufactured in substantial accordance with plaintiff's letters patent. Thereupon an appeal was taken to this court from the order so made, and upon a hearing this court sustained the order of the lower court,

with a modification limiting its operation to infringements of plaintiff's patent by machines constructed under the Parker patent and by him sold to the users. Stebler v. Riverside Heights Orange Growers' Ass'n, 214 Fed. 550, 131 C. C. A. 96, L. R. A. 1915F, 1101.

Returning now to the proceedings under the interlocutory decree and the reference to a master to hear the evidence and to take and state an account and report thereon: The master proceeded with such hearing, and on September 29, 1914, submitted a report in which he found, among other things, the following facts:

Gross profits which would have been realized by plaintiff on 105 sizers sold by defendant Parker..................................... $12,286.05
Less estimated overhead expense to plaintiff on these sales.........    815.85

Net profit which would have been realized by plaintiff............. $11,470.20

Total gross profits realized by defendant Parker from the sale of the 105 machines complete with distributing systems, etc. (including 20 machines sold since date of the issuance of injunction).... $ 9,352.90
Less estimated overhead expense to defendant Parker on these sales   4,120.05

Net profit realized by the defendant Parker...................... $ 5,232.85

Damages to plaintiff (i. e., profits he would have made by the manufacture and sale of the 105 sizers which defendant Parker manufactured and sold, reduced by the sum of the net profits realized by the defendant Parker)..................................... $ 6,237.35

The master's conclusion upon the above findings was that plaintiff should recover from the defendant Parker the sum of $5,232.85 gains and profits, and the sum of $6,237.35 damages, or a total of $11,470.20. Of this amount, $585.05 represented the gains, profits, and damages resulting from the sale of 5 of the infringing machines by defendant Parker to the defendant Riverside Heights Orange Growers' Association, and it was accordingly found that plaintiff should recover this sum from those defendants jointly.

Both parties excepted to this report—the defendants excepting to the finding that the 20 machines of a modified type sold by Parker subsequent to the interlocutory decree and injunction infringed plaintiff's patent, and the allowance of gains, profits, and damages resulting from the sale thereof; and the plaintiff excepting to the allowance of $4,120.05 for defendant's overhead expense, to the finding that the damages suffered by plaintiff are to be measured, not by the sale of the machine as a whole, but by simply the patented "sizers, independent of the bins and distributing system," to the deduction of $815.85 for plaintiff's overhead expense, and to the conclusion that plaintiff was not entitled to recover both the profits made by or accrued to defendant Parker ($9,352.90) and the damage suffered by plaintiff ($12,286.05).

The court approved the report of the special master in its entirety, confirming the allowance of damages and profits to plaintiff in the sum of $11,470.20, and awarding a decree against the defendant Parker for $2,340.20 additional as exemplary damages, because of the sale of 20 infringing machines since the issuance of the injunction. From this decree both parties appeal.

N. A. Acker, of San Francisco, Cal., for appellants.

Frederick S. Lyon, of Los Angeles, Cal., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). **[1, 2]** 1. It is contended by the appellee that appellants' second and third assignments of error, attacking the judgment of the lower court approving the allowance by the master of damages in excess of nominal damages, and of profits upon the entire machines sold by the defend-

240 F.—45

ant Parker, complete with bins and distributing systems, instead of upon the patented grader only, are defective, in that they raise objections which were not presented to or considered by the lower court. Other than this, there is no answering argument made by appellee with respect to the questions discussed in appellants' brief under these assignments. It is a well-settled rule of law that:

"Exceptions to reports of masters in chancery are in the nature of a special demurrer, and the party objecting must point out the error; otherwise, the part not excepted to will be taken as admitted." Story v. Livingston, 13 Pet. 359, 366, 10 L. Ed. 200 (citing Wilkes v. Rogers, 6 Johns. [N. Y.] 566). "A party neglecting to bring in objections cannot afterwards except to the report." Id.; McMicken v. Perin, 18 How. 507, 510, 15 L. Ed. 504. "Proper practice requires that objections to a master's report shall be taken in that [the trial] court, that any errors discovered therein may be rectified by the court itself, or by a reference to the master for a correction of his report, without putting parties to the delay and expense of an appeal to this court." Topliff v. Topliff, 145 U. S. 156, 173, 12 Sup. Ct. 825, 832 (36 L. Ed. 658).

See, also, Sheffield, etc., Railway Co. v. Gordon, 151 U. S. 285, 290, 14 Sup. Ct. 343, 38 L. Ed. 164.

After a careful reading of appellants' exceptions to the master's report, we are of opinion that they refer specifically to the right of the master to find, and his finding, that the modified machines, manufactured and sold by the appellant Parker since the entry of the interlocutory decree herein, infringed appellee's patent, and to the allowance of *any* profits and damages for such infringement. They clearly furnish a basis for the first, sixth, and seventh assignments of error, which relate to the question of infringement by the modified Parker machines, but are restricted by their terms to that question alone. It is further apparent from its opinion that the lower court so construed these exceptions. There is nothing in the record to show that any of the points now urged by appellant under the second and third assignments were ever presented to or considered by the lower court, and this court will not review a master's report upon objections taken here for the first time.

[3, 4] 2. This brings us to the consideration of the decree of the court in sustaining the master's report holding that the new apparatus placed on the market by the defendant Parker since the date of the interlocutory decree was an infringement of the plaintiff's invention. The first objection is that this Parker apparatus is claimed by the defendants to be a new device, differing from the apparatus held valid by this court in Stebler v. Riverside Heights Orange Growers' Ass'n, 205 Fed. 735, 124 C. C. A. 29, to such an extent as not to be an infringement of plaintiff's invention; that the question whether this new device was an infringement of plaintiff's invention was a matter of substantial dispute, and the issue should have been determined upon a motion by the plaintiff for a supplemental decree. Such a motion, or an application to the court to enjoin the use of the new apparatus, would, we think, have been the better practice; but, as the issue appears to be fairly presented by the master's report and by the proceedings resulting in the decree of the court below confirming it, we shall consider the question on its merits. The master in his report says:

"That the defendants were guilty of infringing the plaintiff's patent prior to November 7, 1913, was fully determined by the interlocutory decree entered herein on that date. Since that decree, by a modified construction of the infringing device, I find the defendant Parker has further infringed the plaintiff's patent."

The court, in confirming this report, held:

"That the parts of the last-mentioned machine operate in substantially the same manner as to produce substantially the same result attained by plaintiff's invention, and that, as I understand it, is sufficient to justify, and in fact require, the master to make a finding of infringement."

This conclusion we believe to be error. The invention held valid by this court is a machine described in reissue letters patent No. 12,297 to R. Strain, dated December 27, 1904, for grading or assorting fruit with reference to size, and is used exclusively in the orange industry, where, in order to secure a uniform pack, it is necessary that all oranges in a box shall be practically the same size. Assortment by hand is too slow and inaccurate to meet the requirements of the industry, and hence the need and value of the invention. In the opinion of this court (205 Fed. 735, 124 C. C. A. 29) the prior state of the art was reviewed, and among other devices referred to was the machine known as the California grader, based upon a patent, No. 458,422, granted to J. T. Ish, August 25, 1891. Referring to this machine, the court said:

"While efficient beyond any device theretofore invented and of great practical value, in actual use the Ish machine disclosed certain weaknesses or defects. It was wanting both in adaptability to fluctuating grade sizes and adjustability in relation to bin space for the assorted fruit. It is obvious that, if the sorting is dependent upon and controlled by the several steps of a single roller, the grade spaces must sustain fixed and unalterable relations to each other. While possibly the operator might increase or diminish the size of all the spaces alike by increasing or diminishing the distance between the belt and the roller, he could not alter the width at one step without in like manner altering it at all other steps. And necessarily the precise difference in size between the several grades could not be left to the option or discretion of the packer, but must be predetermined by the manufacturer of the machine, for if the step down in the roller is one-half inch or one-fourth of an inch, the difference between the sizes of two successive grades must likewise be one-half or one-quarter of an inch. One lot may run largely to one size, and another lot to a different size. It follows that if the roller in the Ish machine was graduated for nine sizes, and if of a given lot of oranges one half were of one such size and one of another, the corresponding bins would be congested, while other bins would receive little, if any, of the fruit. In the operation of packing it is necessary that the oranges be assorted, not only according to size, but also according to quality, and this latter process must be performed by hand. They must also be wrapped in paper and placed in boxes. Each size being handled separately, one of the problems is to provide adequate bin space to give access for the requisite number employed in these several operations. If the bins were of equal capacity, and the run happened to be confined to two or three sizes, the number of attendants having access to such bins might be too small to handle and pack the fruit and keep the machine from clogging, while those attending other bins would have little, if anything, to do. If under such conditions a part of the dominant grade could be carried forward and delivered into other bins, the difficulty might be obviated. Some relief was secured by elongating the runway, through the use of two or more graduated rollers, instead of one; but the expedient was not wholly satisfactory, even in solving the problem of bin space, and in no wise affected the objectionable fixity of grade relations.

"In this state of the art Strain conceived the invention covered by the claims in suit. In effect it may be described as a modification of or addition

to the Ish machine, by cutting the roller into as many pieces as there are steps, and separately mounting them, all in line longitudinally; each being independent and transversely adjustable. More accurately, several short rollers of uniform diameter are arranged in line, to take the place of the one long graduated roller of the Ish machine, and the required grading space in the case of each roller is secured by adjusting the roller toward or from the traveling belt. It is apparent that with such a construction the rollers may be so arranged as to form a true alignment, and the grading aperture thus be made of uniform width throughout the entire length of the runway, or they may be so adjusted that the opening has as many widths as there are rollers, or for half the distance it may be of one width and the other half another width, and so on. As a consequence, the operator may at will adopt such grade sizes as he sees fit, and, subject to certain limitations, may deliver any size into any bin."

Referring to the defendant's apparatus, held to be an infringement of plaintiff's invention, the court said:

"As in the Strain invention, the other wall or side of the grading space or aperture is made up of a short independent roller rotating upward and outward to avoid pinching the oranges; also, like the Strain machine, this roller is mounted upon brackets of its own, and is transversely and independently adjustable at the will of the operator. * * * The defendants have appropriated the plaintiff's invention, the essence of which is the combination with a traveling belt (common to the Ish, Strain, and Parker machines) *of a series of independent rotating units arranged in longitudinal succession parallel with the belt, each transversely adjustable.*"

It clearly appears from this opinion that the apparatus held to be an infringement of plaintiff's invention was so held by reason of the fact that each series of independent rollers constituted a separate and distinct member of the fruit grader was *independently adjustable,* transversely toward and from the fixed member of the runway, and the end to end rollers were *independently rotatable,* one with respect to the others, each adjustable and rotatable roller being mounted in *independent brackets of its own.* Under this construction, any one roller or grade unit of the series of rollers arranged in longitudinal succession was adjustable transversely without disturbing the position of an adjacent roller, and adjusted in the same manner as the individual rollers of the grader of the reissued patent. This construction resulted in an apparatus the rollers of which could be so arranged as to form a true alignment, and the grading aperture could be made of uniform width throughout the entire length of the runway, or they could be so adjusted that the openings would have as many widths as there were rollers, or for half the distance it could be of one width and the other half another width, or there might be as many openings for each width as desired.

The master in his report describes the modified construction of the infringing apparatus, charged in these proceedings as an infringement, as follows:

"The modified device is a series of end to end rollers all so connected that they are positively driven from the roller at the head end of the machine, while in the Strain reissue patent each roller is driven by a separate belt from the common shaft."

He thereupon draws the conclusion that:

"The function in regard to the rotation of the rollers is the same in each case, since they all rotate together in either case."

And his reason for this conclusion is that:

"Practically, inasmuch as these rollers are all so connected that they rotate together, they constitute a single roller."

The master says further:

"The essence of each of these inventions is the combination with a traveling belt of a series of independent rotating units arranged in longitudinal succession, parallel with the belt, each transversely adjustable."

The master continues:

"There is this about the modified Parker grader: *That the series of connected rollers, driven in unison and constituting the outer wall member of the fruit runway of the grader, are not independently adjustable with respect to each other, nor are they independently rotatable with respect to each other; whereas in the plaintiff's invention the rollers on the graders are absolutely independently adjustable.*" "It may be true," says the master, "that in the modified Parker machines the adjustment of the initial or forward end of the roller does affect the rear end of the preceding roller; but this is immaterial, as the rear end of the roller does not, in operation of the machine, form any part of the grade opening."

But all this was before this court in 205 Fed. 735, 124 C. C. A. 29, and in considering the state of the prior art this court said:

"There was at that time in practical use what was commonly known as the California grader, based upon a patent (No. 458,422) granted to J. T. Ish, August 25, 1891. The essential members of this device were (1) a long horizontal roller, with graduated sections or steps, turned down from a large diameter to a smaller one, resembling an inverted telescope; and (2) a flat endless belt, so adjusted that it was longitudinally parallel with the axis of, but a little lower than, and with a slight lateral inclination from the horizontal toward, the roller. The oranges were fed· or delivered at a point near the large end of the roller, and by the moving belt were carried along, with one side resting upon the belt and the other upon the roller, until a point was reached where the space between the edge of the belt and the roller section was large enough to permit them to fall through into bins or receptacles provided for that purpose. It will be seen that thus the oranges of the smallest size were first eliminated, and then those a little larger, and so on; the largest being carried to the largest opening, which, of course, was opposite the smallest and last step."

[5] The distinction here made between the patent in suit and the prior art is substantially the distinction we find, from the master's report and the evidence upon which it is based, between the patent in suit and the modified device placed on the market by defendant Parker since the entry of the interlocutory decree. The construction of the grade opening formed by the rollers in the defendant's modified apparatus is a return in its substantial construction to the prior art, which this court differentiated from the invention in suit to such an extent that it held that the latter had not been anticipated by such prior art. The rule applicable to the question thus presented is that a construction which would not anticipate cannot infringe. Cook v. Sandusky Tool Co. (U. S. Supreme Court) 28 L. Ed. 124; American Tobacco Co. v. Streat, 83 Fed. 700, 706, 28 C. C. A. 18; Cleveland Co. v. Chicago Co., 135 Fed. 783, 68 C. C. A. 485; Grever v. United States Hoffman Co., 202 Fed. 923, 926, 121 C. C. A. 281.

[6] But there is a further rule also applicable to this question, and that is:

"If the device of the respondents shows a substantially different mode of operation, even though the result of the operation of the machine remains the same, infringement is avoided." Cimiotti Unhairing Co. v. American Fur Ref. Co., 198 U. S. 399, 414, 25 Sup. Ct. 697, 702 (49 L. Ed. 1100).

The conclusion we reach is that under the distinction drawn by this court in its opinion (205 Fed. 735, 124 C. C. A. 29) the defendant's modified apparatus is not an infringement of the patent in suit.

The foregoing will necessitate reducing defendant's gains and profits and plaintiff's damages, as found by the master and confirmed by the decree of the court, by the amounts derived from the sales of the 20 modified Parker machines, held by the master and the court below to infringe plaintiff's patent, now held not to be an infringement. Defendant's gains and profits must therefore be reduced from $9,352.90 to $6,852.16, the difference of $2,500.74 being the profits allowed upon the 20 graders of the modified type.

Allowance must also be made for the overhead expense charged against these twenty graders. It is stipulated that "the gross overhead expense of the defendant Parker for the period from March, 1912, to and including March, 1913, * * * amounted to the sum of $8,-684.59, while the gross business of said Parker during said time amounted to the sum of $83,000," and that "this stipulation with respect to the volume of business and the gross overhead expense for the period between March, 1912, to and including March, 1913, may be taken as an average of the overhead expense *during the period covered by the first and original statement of account filed on behalf of defendant Parker herein*"—i. e., the period from October or November, 1909, (when Parker first commenced manufacturing the infringing grader), to November 7, 1913 (the date of the interlocutory decree herein), during which time the 72 whole sizers and 13 half sizers, held by this court to be an infringement of plaintiff's patent, were manufactured and sold. In other words, the proportion of overhead expense to be charged against these sales is based upon the figures $8,684.59, gross overhead expense, and $83,000, gross business, or 10.46 per cent.

The sales, exclusive of the modified apparatus, amount to $35,404, the overhead expense chargeable against which amounts to $3,703.26. Deducting this item from defendant's profits of $6,852.16, there is left the sum, $3,148.90, representing the net profits realized by defendant from the sales of the 85 infringing graders.

Plaintiff's damages, based upon the loss of the sales of 105 sizers at $175 each, $18,375, must likewise be reduced by the amount of such loss held to have been occasioned by the sale of the 20 modified Parker machines. Eliminating these 20 machines, the loss of sales, amounting to $18,375, must be reduced by $3,500 (i. e., 20 sizers at $175 each), leaving $14,875, instead of $18,375. The manufacturing cost must also be reduced by $1,159.80 (i. e., 20 sizers at $57.99 each), leaving $4,929.15, instead of $6,088.95, for this item; the loss of profit occasioned by the sales of the 85 infringing sizers amounting to $9,945.85, exclusive of overhead expense.

Plaintiff's overhead expense, fixed by stipulation at .4.44 per cent. of sales, must for the same reasons be reduced from $815.85 (based upon

total sales of $18,375) to $660.45 (based upon total sales of $14,875), leaving a net loss to plaintiff of $9,285.40, instead of $11,470.20. The net gains and profits realized by defendant and the net damages suffered by plaintiff by reason of the sale of the 85 infringing graders may therefore be summarized as follows:

Defendant's profits on 72 whole sizers and 13 half sizers, "Parker patent" type...............................................$ 6,852 16

Less overhead expense amounting to 10.46 per cent. of sales: 10.46 per cent. of $35,404........................................... 3,703 26

Net profits to defendant upon 85 infringing machines..............$ 3,148 90

Selling price of 85 sizers, if they had been sold by plaintiff ($175 each) ................................................................$14,875 00

Net manufacturing cost to plaintiff, had they been manufactured by him, (exclusive of overhead expense), $57.99 each sizer........... 4,929 15

    Profit ............................................................ $ 9,945 85

Less overhead expense amounting to 4.44 per cent. of sales: 4.44 per cent. of $14,875................................................... 660 45

Net loss (damages) to plaintiff upon sales of 85 infringing sizers, based upon the evidence that, in the absence of such infringement, he would have himself made the sales and realized profits thereon amounting to.........................................................$ 9,285 40

3. The 20 graders of the modified Parker type having been held not to infringe plaintiff's patent, it follows that the further award of damages, amounting to $2,340.20, made by the lower court upon the assumption that the manufacture and sale of these 20 machines constituted a willful infringement, should not be added to the foregoing damages.

4. Turning now to the cross-appeal taken by the plaintiff, Stebler, the first assignment of error attacks the allowance of overhead expense of the defendant Parker. Defendant Parker being engaged in the general manufacture and sale of packing house machinery and supplies, the stipulation, above referred to, was entered into by the parties for the purpose of fixing the proportion of overhead expense to be charged against the grader business of this defendant. It is insisted by counsel for plaintiff that this stipulation is rendered ineffective and void by reason of the failure of the parties to stipulate as to the amount of grader business transacted during the stipulated period taken as a test, in order to secure the percentage or pro rata of overhead expense chargeable to the grader business.

We are unable to see how the fact that the exact amount of grader business for the period between March, 1912, and March, 1913, is not shown, could affect the ratio which the gross overhead expense bears to the gross sales for that period, which ratio is, by virtue of the stipulation above referred to, determinative of the proportion of overhead expense chargeable upon the grader business for the period during which the 85 infringing graders were manufactured and sold. We have heretofore, in this opinion, held that the proportion of overhead expense to be charged against these sales should be based upon the figures $8,684.59, gross overhead expense, and $83,000, gross business, or

10.46 per cent. This is, we think, in accordance with the terms and intention of the stipulation.

[7] 5. Plaintiff, Stebler, next assigns error in the limiting of his damages to the profits he would have realized from the sale of the patented sizers, instead of from the sale of the fruit-grading machines complete with bins and distributing systems. It is not denied that the claims involved (Nos. 1 and 10 of reissue letters patent No. 12,297), although for a combination of elements, apply only to such combination of elements in a fruit grader or fruit-grading machine; the remainder of the fruit-grading machine, or so much thereof as was patented, including the distributing system sold by Stebler in connection with the grader, being covered by other claims and other patents not involved in this suit. This being so, the burden of apportionment was then logically with the plaintiff, since he was entitled to recover only for such part of the commingled profits as was attributable to the use of his invention. As said by Mr. Justice Field in Garretson v. Clark, 111 U. S. 120, 121, 4 Sup. Ct. 291, 28 L. Ed. 371:

"When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated. The rule on this head is aptly stated by Mr. Justice Blatchford in the court below: 'The patentee,' he says, 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.'"

In the present case there is clear and convincing proof of the selling price of the patented feature in plaintiff's fruit grader, and of the cost of manufacture and sale of the same, wherefrom the profit derived by plaintiff is easy to ascertain; whereas, upon the other hand, we do not deem the evidence sufficient to justify a finding that the entire value of the whole fruit-grading machine, as a marketable article, is properly and legally attributable to the patented feature.

The selling price of the 85 patented sizers, $14,875, when reduced by the manufacturing cost of $4,929.15 and the overhead expense of $660.45, leaves a net profit to plaintiff of $9,285.40, which, having been lost because of the infringement, becomes the proper measure of plaintiff's damages.

[8] 6. Plaintiff's third exception to the master's report, and upon which is based his third assignment of error, relates to the deduction as for overhead expense of plaintiff from the damages awarded. Plaintiff's contention in this behalf is that it would have cost him no more than the price of materials and labor (i. e., $153.41 for each grader) to have manufactured and sold the graders made and sold by the appellees, and that his overhead expense would not have been increased at all thereby. Plaintiff, Stebler, like Parker, was engaged in the general manufacture and sale of packing house machinery and

supplies. It is contended by him that no additional buildings, machinery, or tools would have been required to handle this additional business, and no additional insurance or taxes would have resulted therefrom. Yet it is apparent the various other items of overhead expense would have been increased thereby; and not only this, but the ratio which the grader business bore to the gross business would have been increased thereby, resulting in a greater proportion of the overhead expense properly chargeable to the grader business. The allowance as for overhead expense on the part of plaintiff, which we have reduced in this opinion to $660.45, seems reasonable, and one which is fairly deducible from the evidence.

[9] 7. The next objection to the decree of the lower court relates to the profits and damages which the plaintiff is entitled to recover in this case. Section 4921, R. S. U. S. (Comp. St. 1913, § 9467), provides as follows:

"Upon a decree being rendered in any such case for an infringement, the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby; and the court shall assess the same or cause the same to be assessed under its direction. And the court shall have the same power to increase such damages, in its discretion, as is given to increase the damages found by verdicts in actions in the nature of actions of trespass upon the case."

The bill of complaint filed by the plaintiff asked that the defendants be decreed to account for and pay over unto plaintiff the gains and profits realized by the defendants from and by reason of the infringement, and, further, that the defendants be decreed to account for and pay over unto the plaintiff the damages suffered by him by reason of the infringement. In Stebler v. Riverside Heights Orange Growers' Ass'n, 205 Fed. 735, 740, 124 C. C. A. 29, this court directed the lower court to "grant the relief prayed for." The interlocutory decree entered pursuant to this direction provided:

"That complainant recover of the defendants, and each of them, the profits, gains, and advantages which said defendants, and each of them, have or has derived, received, or made by reason of said infringement, and that complainant recover of the said defendants, and each of them, any and all damages which complainant has sustained or shall sustain by reason of said infringement by defendants, or either of them."

In accordance with this decree, the matter was referred to the master, to ascertain and report to the court the amount of such damages, and also the amount of such gains, profits, and advantages. It is this report of the master, upon which the final decree is based, and from which the present appeals by both plaintiff and defendants have been taken. The report of the master upon this question is as follows:

"In determining the amount of the damages which the plaintiff has suffered by reason of defendant Parker's infringement of plaintiff's patent, the profits which the defendant Parker made from his infringing acts, being less than the amount of the profits which the plaintiff might have gained by the manufacture and sale of the same number of machines as were made by the defendant, are to be subtracted from the amount of the gains which the plaintiff might have gained by supplying the demand for the machines supplied by the defendant Parker. It is not proper, however, to take the entire profits, which the plaintiff would have made but for the infringement, and add

thereto the defendant's profits. The damages do not consist solely in what profits the defendant made, but if the plaintiff recovers from the defendant all the profits which the defendant made, and the damages which the plaintiff suffers by reason of the difference between what he could have manufactured the articles for at less expense than the defendant, or sold them at a higher price, the plaintiff is fully compensated by reason of the acts of infringement of the defendants."

In support of this determination the master cites Westinghouse v. New York Air Brake Co. (C. C.) 131 Fed. 607, where the court said:

"The rule is clear that the profits which the complainant might have gained by supplying such demand are recoverable as damages which it suffered thereby. It is also clear that, if such sum exceeds the profits which the defendants gained, such profits can be enlarged until they equal the complainants' losses, but that the two amounts cannot be added together and charged up to the defendants."

It is contended by the plaintiff in his cross-appeal that the report of the master is not in accordance with the opinion of this court in Stebler v. Riverside Heights Orange Growers' Ass'n, 214 Fed. 550, 131 C. C. A. 96, L. R. A. 1915F, 1101. That was an appeal from a temporary restraining order entered February 18, 1914, enjoining the prosecution by plaintiff of other suits for infringement of the Strain reissue patent, No. 12,297. What was involved in that case was a review of the temporary restraining order, and that only. The cause as a whole was not, and could not be, transferred to the appellate court upon the question of the validity of the temporary restraining order or prior to a final decree. Ex parte National Enameling Co., 201 U. S. 156, 161, 26 Sup. Ct. 404, 50 L. Ed. 707. But this court, referring to the prior interlocutory decree entered November 7, 1913, said:

"There was thus distinctly provided a method whereby the plaintiff might recover all losses suffered by him by reason of the infringement of his patent —those in the nature of damages as well as those in the nature of profits received by the infringing defendants. * * * The plaintiff derives his profits from the manufacture and sale of the fruit-grading machines covered by the patent. These profits consist of the difference between the cost of manufacture and the prices for which he sells the machines. These profits are therefore the only compensation which he receives for the machines manufactured and sold by him during the entire life thereof. When final judgment is entered against the defendants, pursuant to the accounting which has been ordered against them, the plaintiff will receive thereunder full compensation for the use of the machines by the vendees of the defendants herein for such period as they are capable of being used, in the same manner and to the same extent as he would have done had he sold the machines himself."

This was not determining the particular elements of "full compensation," nor was it deciding the question as upon a final decree; but a careful reading of the language of the opinion will show that it follows the rule laid down in Birdsall et al. v. Coolidge, 93 U. S. 64, 69 (23 L. Ed. 802), where the Supreme Court said that under this section of the Revised Statutes:

"Where the suit is at law, the measure of damages remains unchanged to the present time; the rule still being that the verdict of the jury must be for the *actual* damages sustained by the plaintiff, subject to the right of the court to enter judgment thereon for any sum above the verdict, not exceeding three times that amount, together with costs. 16 Stat. 207. Damages of a compen-

satory character may also be allowed to the complainant, suing in equity, in certain cases, where the gains and profits made by the respondent are clearly not sufficient to compensate the complainant for the injury sustained by the unlawful violation of the exclusive right secured to him by the patent. Gains and profits are still the proper measure of damages in equity suits, except in cases where the injury sustained by the infringement is plainly greater than the aggregate of what was made by the respondent, in which event the provision is that the complainant 'shall be entitled to recover, in addition to the profits to be accounted for by the respondent, the damages he has sustained thereby.'"

In other words, this holding is that, in a case where the infringer's gains and profits, if used as the measure of damages, would be insufficient to compensate patentee for the injury sustained by reason of the infringement, such additional damages will be awarded as will compensate him for the actual loss sustained. Mr. Justice Matthews, delivering the opinion in Root v. Railway Company, 105 U. S. 189, 213, 26 L. Ed. 975, and referring to this section of the Revised Statutes, states that:

"Under the act of Congress of 1870, he [the patentee] may recover damages in addition to the profits to be accounted for by the defendant; but, as the recovery is limited by the act to the actual damages, it is manifest that the recovery of damages and profits is not intended to be double, but that, when necessary, the damages are to supplement that loss of the complainant which the profits found to have been received are insufficient to compensate, subject to the power of the court as to their increase, as in case of verdicts."

That the additional damages are to compensate patentee only for such loss as he may have sustained in excess of the infringer's gains and profits is stated in clear and unambiguous terms in the opinion in Tilghman v. Proctor, 125 U. S. 136, 149, 8 Sup. Ct. 894, 901 (31 L. Ed. 664), where the Supreme Court, referring to section 4921, R. S. (Comp. St. 1913, § 9467), said that it—

"expressly affirms the defendant's liability to account for profits, as well as authorizes the court sitting in equity to award and to treble any damages that the plaintiff has sustained in excess of the defendant's profits."

It will be observed that the power of the court to increase the damages in its discretion, as in an action at law, is not involved in this feature of the report, or in the final decree of the court confirming it. The action of the lower court in fixing plaintiff's damages at a sum sufficient to compensate him for the injury he has sustained by the infringement is therefore not only in accordance with the established rule in this regard, but also with the opinion of this court upon the temporary restraining order.

The foregoing requires a decree in favor of plaintiff for such sum as will fully compensate him for all losses occasioned by defendants' infringement (such losses exceeding the amount of defendants' profits), which will be, as heretofore stated, the sum of $9,285.40, and the costs of these appeals in favor of the appellants, defendants in the court below; and it is so ordered.