### KILLEFER MFG. CO. v. DINUBA ASSOCIATES, Limited.

#### No. 6862.

Circuit Court of Appeals, Ninth Circuit.

Oct. 23, 1933.

Lyon & Lyon, Lewis E. Lyon, and Frederick S. Lyon, all of Los Angeles, Cal., for appellant.

Lincoln V. Johnson, C. Huntington Jacobs, and Arthur P. Shapro, all of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

The appellee, Dinuba Associates, Limited, a corporation, is the owner of patent No. 1,-584,644, issued May 11, 1926, on an application filed March 6, 1923, to H. Petzoldt, for a power lift implement. The appellant, Killefer Manufacturing Company, a corporation, is the owner of patent No. 1,710,222, issued April 23, 1929, on an application filed December 8, 1924, to A. W. Hudson, for a power lift implement.

The appellant is engaged in the manufacture of agricultural implements of various types, and the appellee brought this suit for infringement, claiming that the appellant, in the manufacture of its implements, had infringed claim 1 of the patent issued to H. Petzoldt, owned by it.

The appellee seems to concede that the device patented by A. W. Hudson, owned by the appellant, would not infringe claim 1 of the patent owned by it. It contends, however, that, whether or not the Hudson device is an infringement of its patent, the implements actually manufactured by the appellant embody the device covered by claim 1 of the Petzoldt patent.

Appellee concedes in its brief that power lift implements are old in the art, and that claim 1 of its patent should be strictly limited to the claims thereof. We quote in that regard from appellee's brief: "At the start of the trial in the District Court, the attorney for appellee stated that the Petzoldt patent in suit was to be strictly limited to the claims thereof; that the plaintiff did not seek a broad interpretation of the claim; that the claim should be strictly construed; and that claim 1 was not entitled to a full range of mechanical equivalents."

We quote claim 1 of the Petzoldt patent, although without the drawings and specifications and descriptive matter in the patent the claim is quite unintelligible: "In a power lift implement, a frame, an axle journaled transversely of said frame, an arm on each end of the axle, each arm terminating at the lower end with a spindle, traction wheels rotatable on said spindle, a pair of spaced discs mounted on one spindle, a pair of spaced discs mounted on one spindle and fixed to the adjacent wheel, a plurality of pins extending transversely between the discs, and at regular intervals in a circular formation adjacent the edges of the discs, an elongated pawl pivotally mounted on the frame at a point underneath the axis of the axle and normally extending forwardly alongside of the adjacent arm, said pawl having a hooked end terminating above the pins, means for swinging the pawl into an engageable position with said pins, whereby when the hooked end is engaged with one pin and the discs rotate, the next succeeding pin will engage the pawl to disengage the hooked end."

Before attempting to analyze this claim or apply it to the facts in the case, a general statement with reference to power lift implements should be made. The purpose of the power lifting device is to provide means by which the implements, such as a plow, a subsoil plow, a cultivator, or other tool for working the earth, may be lifted clear of the ground by the application of the tractive power which is also utilized to pull the implement. The object of lifting the tools from the ground is to enable the implement to be taken to and from the place of work and to lift the tool while turning corners during the progress of the work instead of having the tools dragging on the surface of the ground. The tools may be rigidly attached to the carriage or body of the implement or they may be lifted by direct application of power to the tools themselves. In the implements involved in this action and described in the patents of Petzoldt and Hudson the tools are rigidly attached, and the entire carriage is lifted. The axle upon which the traction wheels are mounted is bent thus:

and, when the tools are raised above the surface of the ground, the carriage is suspended from the transverse portion of the bent axle, that is, from the highest portion, thus:

The implements are raised from the ground by applying power to the bend in the axle, thus lifting the bent portion of the axle and with it the carriage and attached tools around the spindle of the axle, as a fulcrum. In the device under consideration the bend consists of four right angle turns, thus:

When the implement is in operation with the tools below, the surface of the ground the arms sx and s'x' of the axle are at an acute angle with the surface of the ground. The implement is attached to the transverse portion of the axle marked xx' and the wheels to the spindle ws and w's'. By rotating the axle about the spindles ws and w's' the implement is raised as the arm of the axle approaches the perpendicular. In order to rotate xx' about the line ww' and thus lift the heavy implement carriage with the tools attached, it is necessary to apply the power to xx' or some portion of the carriage suspended therefrom. This is accomplished in the device of the appellant and also in that of the appellee by a pawl, hooked over a pin in the periphery of a wheel which is secured concentrically to the traction wheel and revolves with it. This smaller wheel bolted to the traction wheel is composed of two discs attached by four or more pins in the periphery of the discs, but separated a few inches by cylindrical sleeves over the bolts. When the operator of the implement desires to raise the carriage and tools, he hooks the pawl over the revolving pin by moving a lever. When the pin has moved through an arc of about 60°, it is necessary to detach the pawl, as the tools are raised sufficiently, and further connection would bend or break the pawl or cause the traction wheels to slide, as they could not turn further when rigidly connected with the carriage.

It is necessary at this juncture that the power which has been turning xx' about ww' shall be detached, and that some means other than the pawl which had been used for lifting the tools shall be substituted to hold the carriage in its elevated position. This de-

tachment, or release of the pawl, is accomplished in the appellee's patent by the next succeeding pin of the smaller wheel coming in contact with the surface of the shank of the pawl and forcing it off the pin over which it was hooked. The patent drawing of the pawl in the Petzoldt patent is as follows (the letters are ours):

X represents the spindle to the axle, and the pins E–F are the pins of the wheel which rotate about the axis X. C is the pawl, or hook, referred to in the patent, pivoted at A and attached to the arm G. The operator pulls the cord D, moves the arm G forward and the pawl C downward until it hooks over the pin E. The power is thus applied through E and the pawl C, to the point A, so that the point A rotates about the axle X. As the wheel turns, the following pin F comes in contact with the under surface of the pawl at the point indicated by C and forces the hook of the pawl off of the pin E. It will thus be observed that the cord D operates a V-shaped lever hinged at the vertex A. The appellant claims that the appellee's patent, if valid, merely covers this method of detachment. It is not entirely clear whether this is conceded by the appellee, as will presently more fully appear. In the devices of both the appellant and the appellee, power is applied by means of a wheel attached to the traction wheels of the implement having four pins, more or less, by a hook or pawl attached to xx' or to some part of the carriage equivalent thereto, so that as the traction wheel revolves it causes xx' to revolve with it.

In considering the extent of appellee's claim 1, it is necessary to consider the previous state of the art. As we have stated, appellee has admitted that, in view of the state of the art, its claim should be strictly construed. With this we agree. After quoting claim 1 of the Petzoldt patent and italicizing the following portion thereof: "Whereby when the hooked end is engaged with one pin and the discs rotate, the next succeeding pin will engage the pawl to disengage the hooked end," appellee says: "Appellant has unnecessarily exerted itself to show that the description of the kick off mechanism contained in the italicized last four lines of this claim was the inducing cause for the issuance of this patent. Obviously it was."

Appellee's principal witness, Baldwin Vale, after stating that the number of pins in the wheel was immaterial, said:

"Q. It would not change the fact as to whether the succeeding pin of the roller kicked off the pawl, or not? A. Well, the whole idea is to get the succeeding pin to kick the pawl out.

"Q. That is the whole idea, as you see it: Is that correct? A. That is the object of the invention."

In appellee's brief this testimony is commented on as follows: "Appellee's expert, Vale, testified that the whole idea of the Petzoldt patent was to get the succeeding pin to kick the pawl out, and according to said expert, it was immaterial whether or not there were four, five, six or seven pins in the ratchet wheel."

In determining the scope of the Petzoldt patent and whether or not the same was anticipated, the appellant refers to the Patent Office file wrapper. The appellee concedes that it is bound by the admissions contained in the file wrapper. The patentee's first claims were rejected September 24, 1923, because the method of detaching the pawl by means of the ratchet was anticipated by the Kaupke patent, No. 1,387,406. To meet the objection of the Patent Office, the applicant said: "Claim one should be allowed since it recites the novel structure of the discs 11 and 12 having the pins 23 disposed there between so that when the end 15a is in engagement with one pin the next pin will engage the pawl to disconnect or disengage the end 15a. As understood none of the references show this feature of applicant's invention."

As we have already stated, it is not clear from the appellee's brief whether it makes any different contention from that made by the appellant; namely, that claim 1 of the Petzoldt patent relates solely to the means of disengaging the pawl. The Kaupke patent No. 1,387,406, referred to by the Commissioner in his rejection of the appellant's claims, is a patent for a power lift as applied to a plow. The means of lifting the plow is by the en-

gagement of a roller on the end of a bar or strut with one of the teeth of a ratchet. When the lift, by means of the ratchet, has been completed, the bar is released from the tooth of the ratchet by coming in contact with a lug extending laterally from the base of the next tooth of the ratchet. The description of the operation is found on page 4 of this patent, lines 10 to 25, and the operation is indicated in figure 5 of that patent, which we think need not be quoted here. In the Beckwith patent for a wheeled road scraper, No. 301,081, cited by the appellant as an anticipation of claim 1 in the Petzoldt patent, we have a wheeled road scraper with a wheel identical with that described in the Petzoldt patent attached to the traction wheel revolving upon the spindle of the axle. The axle is bent in the same manner as in the Petzoldt patent. A pawl attached to the body of the scraper is engaged with a pin of the smaller wheel by operating a lever, and the pawl is released by coming in contact with one of the following pins of the wheel. The contact is made by an adjustable thumbscrew which is screwed into and through the pawl until its lower end is in the proper place to contact the pin of the wheel at the desired moment. Appellant claims that we have in the Beckwith patent a complete anticipation of claim 1 of the Petzoldt patent. Appellant states: "This patent specifically discloses each and every element of the Petzoldt power lift, in the same combination." Appellant points out that the power lift implement in both the Petzoldt and the Beckwith patent calls for:

"Claim 1. In a power lift implement:

"1. a frame,

"2. an axle, journaled transversely of the frame,

"3. an arm on each end of the axle,

"4. each arm terminating at the lower end with a spindle,

"5. traction wheels rotatable on said spindle,

"6. a pair of spaced disks mounted and fixed to the adjacent wheel,

"7. a plurality of pins extending transversely between the disks and at regular intervals in a circular formation adjacent the edges of the discs,

"8. an elongated pawl pivotally mounted on the frame at a point beneath the axis of the axle and normally extending forwardly alongside of the adjacent arm,

"9. said pawl having a hooked end terminating above the pins,

"10. means for swinging the pawl into an engageable position with said pins,

"11. whereby when the hooked end is engaged with one pin and the disks rotate the next succeeding pin will engage the pawl to disengage the hooked end."

The appellee vehemently denies that the Beckwith patent is at all similar to the device of the Petzoldt patent, and calls attention to the fact that the purpose of the Beckwith device is to empty the carrying box of a road scraper, whereas in the Petzoldt patent the purpose is to raise the tools of the implement from contact with the ground. But the fact is that the carrying box of the Beckwith road scraper is attached to the transverse bar caused by bending the axle, and that the device operates by turning this transverse bar just as in the Petzoldt patent. The turning of the transverse bar of the axle in the Beckwith patent operates to raise the carriage to which the "earth working tool" (the scraper) is attached. It is true that the purpose to be accomplished by the Beckwith patent is not only the lifting of the scraper from contact with the earth and its cutting edge from below the surface, but also to swing the scoop through an angle of a trifle over 90° so as to dump its contents, whereas, in the case of the implements manufactured by the appellant and the appellee, the angle through which the transverse bar moves is approximately 60°. There is a difference between the device shown in the Beckwith patent and that shown in the Petzoldt patent, in that the latter utilizes the next succeeding pin to disengage the pawl, whereas in the Beckwith patent the following pin which disengages the pawl may be the second or third. The operation of the scraper is described in the patent, and we think can be sufficiently understood to show the situation without a diagram, having in mind that the "trundles C–C," as shown by the diagram of the patent, are the pins of the smaller wheel as described in the Petzoldt patent, that the screws ee are attached to and a part of the pawl and disengage the pawl by coming in contact with the following pins of the smaller wheels. We quote therefrom as follows:

"The scoop is now ready for work, and will, as it is drawn along, scrape up the dirt until filled or receiving its maximum load. To aid in raising the scoop, depress the crank F', so as to throw the pawls E'E' into engagement with the trundles CC, which, as will be perceived, perform the function of ratchets. This engagement will cause the scoop

to be raised as the scraper is drawn along; but by the time the hook G engages its catch the screws ee will be engaged by or come in contact with the trundles or ratchets CC, and, owing to the location of those screws with respect to the teeth of the pawls E'E', those teeth will be carried or pushed from their engagement with the said trundles, and the spring J' will then draw the said pawls back to their original positions, and retain them there until the crank F' is again depressed to throw them forward, for the purpose set forth."

█ The drawing accompanying the Petzoldt patent shows a subsoil plow attached to the carriage, but the description of the patent and the claims therein relate to any implement embodying heavy earth-working tools. The claim 1 applies to all such tools, and would undoubtedly be sufficiently broad to cover the scraper lifting device shown in the Beckwith patent. If the road scraper described in the Beckwith patent, which was issued before the Petzoldt patent, would infringe the latter patent if manufactured or used subsequent thereto, then, having been first issued, the Beckwith patent, covering the road scraper, anticipates the latter patent and renders it void. American Tobacco Co. v. Streat (C. C. A.) 83 F. 700, 706; Riverside Heights v. Stebler (C. C. A.) 240 F. 703, 709; Broadway Towel Supply Co. v. Brown-Meyer Co. (C. C. A.) 245 F. 659, 661. This brings us to another phase of the case.

█ Claim 1 of the Petzoldt patent, broadly construed as applying to all power lifting farm machinery, is merely an idea. The idea thus sought to be monopolized is that of incorporating into any earth-working implements a lifting device wherein the lifting power will be applied through a pawl temporarily hooked over a pin in a wheel attached to the traction wheel of the implement (which pin corresponds mechanically to the tooth of a ratchet wheel) in such a manner that the following pin (corresponding to another tooth of a ratchet wheel) will release the pawl. This claim is narrow in one sense but broad in the larger sense that it purports to cover an idea, whenever and wherever that idea is utilized to attach and detach power to the lifting mechanism of an earth-working tool. The idea dissociated from a definite design and description of a machine is not patentable. But, assuming that the idea involved in the patent is sufficiently applied to a definite mechanism by the patent description and drawings of the lever, the wheel, the pawl, and the mounting of the carriage with

its tools eccentrically with reference to the center of the traction wheels, we still have a very broad claim even if it be conceded that the novelty of the patent consists solely in the method of releasing the pawl. The very breadth of this claim endangers its validity because of the number of patents covering portions of this same field. Many of such patents of power lift implements are set up by the appellant as anticipations of the appellee's claim. These were segregated into three types by the witness William A. Doble, Jr., who testified for the defendant. We quote from his testimony the following classification which seems to be an accurate description of the various types: "There are three types of power lift implements classified as to the manner of disc engagement or power lift with the ground wheels disclosed by the prior art patents. These three types are: First, where the pawl is mounted on the crank axle and the pawl disengaged from the ratchet wheel by a stop mounted on the frame. Second, the pawl is mounted upon the frame and disengaged from the ratchet wheel by the action of the ratchet wheel itself. This type is similar to the Petzoldt type of ratchet; and third, where the pawl is mounted on the frame and kicked off or disengaged from the ratchet wheel by a stop mounted on the frame. This latter type is similar to the type of power lift disclosed in the Hudson patent, and the Killefer implements."

Thus the Beckwith patent accomplishes the purpose of the Petzoldt patent as stated by the applicant in the latter patent, from which we quote as follows: "My invention relates to earth working tools and more particularly to a power lift for heavy earth working tools, such as sub-soil plows, cultivators, road levelers, and road building machinery. The object I have accomplished is the raising of earth working tools relative to the carriage at the will of the operator, and with a light operation of a lever."

One of the first patents cited is that of a hay rake, patented December 19, 1876, by letters patent No. 185,612, to R. Wilson. This patent provided for the lifting of the tines of the hay rake, that is, the tool, from the surface of the ground by engaging a pawl attached to the tines of the rake with the tooth of a ratchet attached to the axle of the rake. Thus engaged, the ratchet pulls the pawl forward and lifts the tines and thus dumps the hay gathered by the rake. When this has been accomplished, a lug on the pawl comes in contact with a following tooth of the ratchet wheel (the fourth tooth as shown

in the drawings), releasing the pawl and allowing the tines of the rake to drop back in working position. The lug can be adjusted to regulate the time and point of contact. The idea of having a following tooth in a ratchet wheel disengage a pawl which is being utilized to lift the working tool of an agricultural implement contacting the soil is thus as old at least as the Wilson patent.

In a patent cited by the appellant, No. 1,-361,906, issued December 14, 1920, to B. A. Rupprecht for a ridged land cultivator, the patent drawing shows a pawl with five teeth which are engaged with the pins of the small wheel attached to the traction wheel of the cultivator by the operation of a lever to lift the cultivating tools from the ground. The pawl is disengaged by the action of following pins of the wheel when the lift has been completed. In the specifications of the Rupprecht patent is is said:

"It is common in plow structures of this general nature to provide means by which to turn the axle in its bearings with the result that since the wheels will always engage the ground the frame on which the axle is mounted will be lifted or lowered with respect to the ground.

"There are a great variety of means available for imparting the said turning movement to such an axle. The drawing shows one means which is in common use for that purpose; but since it is so well known it is not necessary to describe it in detail."

We insert drawing here.

"It will be perhaps sufficient to say that secured to one of the wheels is a device in the nature of a gear 31. [This is the Petzoldt smaller wheels with pins.] A rack bar 32 [This is the Petzoldt pawl] is pivoted to the same bracket 17 before referred to, which is fixed to the axle frame. Normally, this rack bar is out of engagement with the gear. If, however, it be swung forward on its pivot, its forward end will come into engagement with the gear and thereafter as the gear turns

it will, by engaging successive teeth on this rack bar cause the axle to turn in its boxes with the result of lifting the axle frame.

"It is to be understood, however, that this particular means for raising and lowering the frame is not of my invention, and is not essential to an embodiment of the invention."

The only difference in principle between the Rupprecht device and the appellee's device is that the wheel with pins pushes the pawl up in the Rupprecht device and in the Petzoldt patent it pulls the pawl. The extra teeth or hooks in the Rupprecht device do not change the idea of a pawl engaged to make the lift and disengaged by a pin of the revolving wheel. The appellee contends that the construction of the power lift mechanism of the Rupprecht tool is entirely different from the power lift mechanism shown in the Petzoldt patent, and asserts: "Once again the appellee is not attempting to assert that the claim of the Petzoldt patent covers such a structure as that shown by Rupprecht." Appellee states: "The Rupprecht patent discloses a rack form of lift No. 32 which is entirely different from the pawl type of mechanism specified in the Petzoldt patent." What appellee calls "rack form of a lift bar" is nothing more nor less than a pawl. Instead of having one hook as in the appellee's device, the pawl has five teeth or sockets which correspond with five hooks.

The Mader patent cited by the appellant as an anticipation was issued June 23, 1925, but was applied for September 14, 1922. This patent discloses a small wheel having pins attached to the wheel of the cultivator, a pawl attached to the carriage of the cultivator, with five teeth on the surface of the pawl. The pawl is engaged with the pin of the wheel, and, like the Rupprecht patent, the successive pins of the wheel engage the successive notches in the surface of the pawl until the carriage has been sufficiently elevated, whereupon the next pin of the wheel strikes the surface of the pawl where there is no corresponding depression and disengages the pawl.

These patents for power lift agricultural implements applied for and issued before the Petzoldt patent show a system of disengaging the pawl of the lifting device by a succeeding pin of the small wheel anticipating the Petzoldt patent.

With reference to the Rupprecht and Mader patents, appellee states: "It is true that the Rupprecht patent and the Mader patent describe how to accomplish the raising of a plowing implement out of the ground through

rack bars on the frame cooperating with ratchets on the tractor wheels of the vehicle, but the means specified are not the same as those specified by Petzoldt in the claim of the patent in suit."

The fact is that the "rack bar" is a pawl, or its equivalent, and the "ratchet" in the prior patents referred to is the wheel with discs separated by pins, in the Petzoldt patent, and they operate in the same way.

We conclude that claim 1 of the Petzoldt patent is invalid because anticipated by the Beckwith patent above referred to and so far as the claim is predicated upon the disengaging of the pawl by a following pin of the wheel as described in the claim was anticipated by the Rupprecht and Mader patents. In view of our conclusion that claim 1 of the appellee's patent is invalid, it is unnecessary to consider the question of infringement.

Decree reversed.